# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ELIAS MAKERE, FSA, MAA,

        Plaintiff,

v.                                                    Case No.   3:20-cv-905-MMH-JRK

ALLSTATE INSURANCE
COMPANY,

        Defendant.

_____

ELIAS MAKERE, FSA,

        Plaintiff,

v.                                                    Case No.   3:20-cv-921-MMH-JRK

ALLSTATE INSURANCE
COMPANY,

        Defendant.

_____

ELIAS MAKERE,

        Plaintiff,

v.                                                    Case No.   3:20-cv-922-MMH-JRK

ALLSTATE INSURANCE
COMPANY,

        Defendant.

_____

# O R D E R[1]

**THIS CAUSE** is before the Court on Defendant's Dispositive Motion to Dismiss Plaintiff's Complaint With Prejudice, and Memorandum of Law in Support Thereof (Doc. 4; Motion) filed in each of the above captioned cases on August 21, 2020.   In the Motion, Defendant Allstate Insurance Company moves to dismiss the Complaint for Employment Discrimination (Doc. 1; Complaint) in its entirety pursuant to Rules 12(b)(6) and 12(b)(1), Federal Rules of Civil Procedure (Rule(s)).   <u>See</u> Motion at 1.   On October 2, 2020, Plaintiff Elias Makere, who is proceeding pro se, filed a response in opposition to the Motion.   <u>See</u> Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. 12; Response).   Accordingly, this matter is ripe for review.

## I.    Extrinsic Evidence

As an initial matter, the Court observes that both parties attached numerous exhibits to their briefs.   <u>See</u> Motion, Exs. A-E, G,H, J, K; Defendant's Notice of Filing Redacted Exhibits F and I in Support of Defendant's Dispositive Motion to Dismiss (ECF 4) (Doc. 6), Exs. F, I; Response, Exs. A-O; Plaintiff's Affidavit in Support of Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. 13; Makere Aff.).   With the exception of the Makere Affidavit,

---

[1] On August 31, 2020, the Court entered an Order consolidating the above-captioned cases, directing the Clerk of the Court to terminate any pending motions in the later-filed cases, 3:20-cv-921 and 3:20-cv-922, and instructing the parties to make all future filings in the lead case only, 3:20-cv-905.   <u>See</u> Order (Doc. 7) at 2-3.   Accordingly, all citations to the docket in this Order refer to the lead case, 3:20-cv-905, unless otherwise stated.

these exhibits consist of filings, decisions and other records from prior administrative and state court proceedings between Makere and Allstate. Neither party appears to object to the Court's consideration of the opposing party's exhibits, nor do either Makere or Allstate dispute the authenticity of these documents.

In general, a district court "must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." See Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citing Rule 12(b), Federal Rules of Civil Procedure (Rule(s))). However, the Eleventh Circuit recognizes certain exceptions to this rule. See Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010). As relevant here, courts may consider properly judicially noticed documents in resolving a motion to dismiss. See id. (holding that the district court "properly took judicial notice" of documents which were "public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned'" (quoting Fed. R. Evid. 201(b)); Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."). Other than the Makere Affidavit, the exhibits attached to the Motion and Response are part of the administrative and state court record and not subject to reasonable dispute. As such, the Court will take judicial notice of these documents. See Fed. R. Evid. 201(b)(2); Horne, 392 F. App'x at 802;

Miller v .Fla. Hosp. Waterman, No. 5:13-cv-249-Oc-10PRL, 2013 WL 5566063, at *3 n.2 (M.D. Fla. Oct. 8, 2013) (taking judicial notice of FCHR and EEOC records); Hawthorne v. Baptist Hosp., Inc., No. 3:08cv154/MCR/MD, 2008 WL 5076991, at *3-4 (N.D. Fla. Nov. 24, 2008).

As to the Makere Affidavit, Makere appears to have prepared this Affidavit solely for the purpose of filing it in this case and not as a part of the administrative proceedings.  Thus, the Court may not take judicial notice of this document, see Fed. R. Evid. 201(b), nor can the Court discern any other basis which would allow consideration of the Makere Affidavit at this stage in the proceedings.  See Day, 400 F.3d 1272, 1276 (11th Cir. 2005) (explaining that courts may consider extrinsic evidence at the motion to dismiss stage when a document is "(1) central to the plaintiff's claim and (2) undisputed"). Regardless, the Affidavit merely presents Makere's view that the effective date of his termination is August 12, 2016, not September 12, 2016, as stated in the Motion.  See Makere Aff. ¶ 6; Motion at 2.  However, whether Makere's termination effectively occurred on August 12th, when Makere ceased working for Allstate, or on September 12th, when Allstate stopped paying Makere, is not relevant to the issues to be decided in this Order.  See Makere Aff. ¶¶ 7, 8. Thus, even if the Court were to consider the Affidavit, it would have no impact on the resolution of the Motion.

## II.    Background

According to the allegations of his Complaint, Makere worked for Allstate from November 18, 2013, until he was terminated on August 12, 2016. See Complaint for Employment Discrimination (Doc. 1; Complaint) ¶¶ 8, 36. Makere asserts that throughout his employment with Allstate, he endured race and sex-based discrimination and harassment from numerous co-workers and supervisors. See Complaint ¶¶ 12-32. He contends that he filed internal complaints of discrimination with Allstate and suffered retaliation as a result. Id. ¶¶ 27-32. Ultimately, after Makere failed to pass his ninth actuarial exam, a condition of his continued employment in Allstate's Actuarial Career Program (ACP), Allstate terminated him. Id. ¶¶ 33-36. Makere alleges that his termination was discriminatory as other non-black employees also failed to satisfy the requirements of the ACP and were not terminated. Id. ¶¶ 37-39.

On June 30, 2017, Makere filed a charge of discrimination with the Florida Commission on Human Rights (FCHR). Id. ¶ 43. In April of 2018, while the administrative charge was pending, Makere was hit by a car while riding his bicycle. Id. ¶ 46. Makere connects this event to Allstate because in November of 2015, an Allstate employee saw Makere on his bicycle after dark in the parking lot and allegedly cautioned him, "in an ominous tone," to "'be careful on [his] bike.'" Id. ¶¶ 46, 25. Makere interpreted this statement as a threat, which he contends "came to fruition" when he was hit by a car nearly

two and a half years later.   Id. ¶¶ 25, 46.   In addition, according to Makere, a person by the name of Kirk Higgins, purportedly at Allstate's direction, filed "unauthorized documents" attacking Makere in the administrative proceedings. Id. ¶¶ 45, 48.   Makere also alleges that in July of 2018, Allstate somehow induced his former employer, Genworth Financial, to substantially reduce Makere's retirement benefits.   Id. ¶ 49.   Based on the discrimination and retaliation he allegedly endured during and after his employment with Allstate, Makere filed the Complaint in which he asserts claims for race discrimination (Count I), sex discrimination (Count II), and retaliation (Count III) pursuant to the Florida Civil Rights Act (FCRA), sections 760.01 – 760.11 of the Florida Statutes, as well as a claim for race discrimination (Count IV) pursuant to 42 U.S.C. § 1981.[2]

In the instant Motion, Allstate moves to dismiss Makere's claims in their entirety.   Allstate asserts that Makere's FCRA claims are procedurally barred pursuant to Florida Statutes section 760.11(7), because the administrative review process concluded with a "no reasonable cause" finding.   See Motion at 8-11.   Allstate further contends that Makere's state law claims are barred under the doctrines of res judicata and collateral estoppel.   Id. at 11-17.

---

[2] As discussed further below, Makere also filed two lawsuits in state court which, upon removal, were consolidated with this lead case.   The Amended Complaints in the removed cases are identical to the Complaint in the lead case in all material respects.   See Amended Complaint (Case No. 3:20-cv-921, Doc. 3); Amended Complaint (Case No. 3:20-cv-922, Doc. 3).

Likewise, Allstate maintains that Makere's § 1981 race discrimination claim is collaterally estopped as well.   Id. at 17-18.   In addition, to the extent Makere asserts a claim based on the events allegedly taking place in 2018, Allstate argues that Makere cannot state a valid claim for relief based on these actions as they occurred subsequent to his termination and are therefore not "tangible employment actions" actionable under the FCRA or § 1981.   Id. at 19.   Allstate also contends that Makere fails to allege facts plausibly connecting Allstate to the 2018 events.   Id. at 19-20.

In the Response, Makere asserts that he has adequately alleged a claim for relief and points to the allegation in the Complaint that "Defendant only fired the black man who failed an actuarial exam."   See Response at 11 (quoting Complaint ¶ 51).   He does not respond to Allstate's contention that his allegations regarding the events of 2018 do not form the basis of a valid claim.   As to Allstate's res judicata arguments, Makere contends that this doctrine does not apply because his sex discrimination claims, and the events of 2018 were not considered during the administrative review process.   Id. at 16-17.   Likewise, Makere contends that collateral estoppel does not apply because the instant case involves "many different issues" than those which were addressed in the administrative proceedings, most notably his sex discrimination claims, certain aspects of his race discrimination claims, and the events of 2018.   Id. at 20-21.

### III. Administrative History

### A. First Administrative Charge

As stated above, Makere filed his first charge with the FCHR on June 30, 2017.  <u>See</u> Motion, Ex. A (Doc. 4-1; 2017 FCHR Charge).   On December 15, 2017, the FCHR issued a "No Reasonable Cause" determination, <u>id.</u>, Ex. B, in response to which Makere promptly filed a 232-page petition for relief with the Division of Administrative Hearings (DOAH), <u>id.</u>, Ex. C (Doc. 4-3; 2018 Petition).   After substantial motion practice and an evidentiary hearing spanning four days, the Administrative Law Judge (ALJ) issued a Recommended Order on April 18, 2019.   <u>See</u> Motion, Ex. D (Doc. 4-4; Recommended Order).   In the 111-page Recommended Order, the ALJ made numerous findings of fact and conclusions of law regarding Makere's claims. The ALJ determined that many of Makere's claims were time-barred, <u>id.</u> ¶¶ 266-67, but ultimately concluded that regardless, Makere had failed to meet his burden of establishing race discrimination, sex discrimination, sexual harassment, hostile work environment, or retaliation.   <u>See</u> <u>id.</u> ¶¶ 275, 279, 296, 301, 302, 315.

In his Response, Makere cites to evidence that during the administrative proceedings, the ALJ entered an Order on Respondent's Motion to Strike, instructing that evidence as to certain of Makere's allegations would be excluded because the incidents were not properly raised in his underlying

FCHR Charge, or were otherwise time-barred.   <u>See</u> Response, Ex. G. Nevertheless, at the evidentiary hearing, the ALJ permitted Makere to present evidence on any matters identified in the investigative memorandum.   <u>See</u> Recommended Order ¶¶ 46-47.   The ALJ also noted in the Recommended Order that Makere spent "considerable time" at the evidentiary hearing addressing matters "that he claimed were provided to FCHR, but which were not included in the [2017 FCHR Charge], or discussed in the [investigative memorandum.]"   <u>Id.</u> ¶ 177.   Notably, the ALJ stated in the Recommended Order that "to ensure as complete a record as possible for consideration by the FCHR, findings as to <u>as many allegations as are identifiable</u> will be made herein."   <u>See</u> Recommended Order ¶ 47 (emphasis added).   Indeed, the ALJ set forth at length the testimony presented at the evidentiary hearing regarding the various alleged incidents of race or sex discrimination or harassment, and ultimately found that Makere had failed to present sufficient evidence to sustain his charges.

Significantly, the ALJ made ultimate factual findings that:

> the decision to remove [Makere] from the ACP was one required by the ACP Guidelines and applied equally to each employee that failed to meet the one-in-three rule [concerning the passage of actuarial exams].   The decision to not offer continued employment in a different position . . . was based on his inability to become [a Fellow of the Society of Actuaries], thus, being able to succeed [his supervisor] upon her retirement, his unwillingness to work in a collaborative manner with Allstate's employees, managers, and business partners, and his inability to complete tasks assigned.

<u>See</u> Recommended Order ¶ 246.  As to Makere's myriad other allegations of discriminatory and harassing treatment, the ALJ concluded:

> [Makere's] statements alone do not provide the support to sustain his charge of discrimination.  A review of the entire record of this proceeding reveals no corroborative evidence that many of the alleged statements and comments even occurred, much less that they were the result of racial or sexual discrimination, harassment, animus or bias, or that they were retaliation for opposing or participating in a proceeding regarding such discrimination.

<u>See</u> <u>id.</u> ¶ 247.  Likewise, the ALJ determined that "[d]uring the period of his employment, [Makere] never reported to anyone at Allstate that he believed he was being subjected to racial or sexual discrimination or harassment."  <u>Id.</u> ¶ 209.

As for his conclusions of law, the ALJ found that discrete discriminatory acts occurring prior to June 30, 2016, were time-barred, <u>id.</u> ¶¶ 266-67, but that <u>whether time-barred or not</u>, Makere had failed to present any evidence of discriminatory intent, <u>id.</u> ¶ 294.  The ALJ also evaluated the totality of the evidence, including acts which occurred outside the statutory limitations period, in order to resolve Makere's hostile work environment claims, <u>see</u> <u>id.</u> ¶¶ 268-70, and found that Makere had failed to establish that he was subjected to a hostile work environment based on race or sex, <u>id.</u> ¶¶ 295-96, 302.  In addition, the ALJ determined that Makere had failed to prove that he was subjected to sex discrimination, <u>id.</u> ¶¶ 301, and that Makere "did not meet his

burden to establish a prima facie case of discrimination by retaliation," id. ¶ 315.

On June 27, 2019, the FCHR entered a Final Order Dismissing Petition for Relief from an Unlawful Employment Practice in which it adopted the ALJ's factual and legal findings and dismissed Makere's 2017 FCHR Charge and 2018 Petition with prejudice.   See Motion, Ex. E (Doc. 4-5; Final Order).   As permitted under Florida law, see Fla. Stat. § 120.68, Makere appealed the FCHR's Final Order to Florida's First District Court of Appeal.   The First District Court of Appeal found no basis to set aside the Final Order and issued a decision affirming it on July 13, 2020.   See Motion, Ex. K.

**B. Second Administrative Charge**

While the 2017 FCHR Charge was still working its way through the administrative process, Makere filed a second charge of discrimination with the FCHR, which was received on April 26, 2019.   See Motion, Ex. F (Doc. 6-1; 2019 FCHR Charge).   In the 2019 FCHR Charge, Makere checked the boxes for discrimination based on race, color, sex, and retaliation.   Id.   In the narrative portion of the Charge, Makere primarily addressed his termination, although he also noted "5 Years of racial/sexual harassment," to include "Racist Dolls, Racist Characterizations," "Date Requests (Dinner-&-a-Movie)," and "Targeted discrimination."   Id.   In addition, he stated that Allstate retaliated against him for complaining, and that "[t]he most recent act of retaliation occurred in

July 2018." Id.  He did not identify or describe the alleged July 2018 act of retaliation in the Charge.  On October 18, 2019, the FCHR issued a "No Reasonable Cause" determination, finding that the "facts and claims are identical" to the 2017 FCHR Charge, and further that the claims are untimely as they are "based on events that took place in 2016."  See Motion, Ex. G.  On June 1, 2020, the FCHR issued an amended notice.  Id., Ex. H (Doc. 4-8; Amended Notice).  In the Amended Notice, the FCHR explained that the previous notice was mailed to Makere's "legal representative in a former matter," and as a result, the FCHR issued the amended determination "addressed directly to [Makere] at his mailing address on record."  Id.  The FCHR further stated that "[n]o other changes were made" to its October 18, 2019 determination.  Id.  The Amended Notice informed Makere that he had thirty-five days from the date the amended notice was signed, June 1, 2020, to file a petition seeking an administrative hearing.  Id.

Makere filed his petition with the DOAH on July 6, 2020.  Id., Ex. I.  On July 7, 2020, the ALJ entered an Order Relinquishing Jurisdiction and Closing File in which he found that:

> There are no disputed issues of material fact for disposition that lead to any conclusion but that, applying the doctrines of res judicata, collateral estoppel, and administrative finality, the [2019 FCHR Charge] should be dismissed with prejudice.  It is clear from the face of the [2019 FCHR Charge] that there are no amendments that would overcome the fact that each of the allegations contained therein have been fully litigated, and that any proposed amendment would be futile.

<u>See</u> Motion, Ex. J at 3.   With respect to the unspecified acts of retaliation in July 2018, the ALJ stated that "there can be no dispute that the last possible discriminatory and unlawful employment practice that could have been taken by Allstate would have been the act of terminating [Makere]," which occurred in 2016.   <u>Id.</u>, Ex. J at 1.   The ALJ reasoned that "[s]ince [Makere] was terminated on September 12, 2016, there could be no significant change in [Makere's] circumstances that would be cognizable pursuant to [the FCRA].  <u>Id.</u>, Ex J at 3.   As such, the ALJ relinquished jurisdiction to the FCHR "for entry of a final order dismissing" Makere's petition.   Neither party submits any evidence as to whether or when that order was entered.[3]

### C. New Lawsuits

On July 2, 2020, while his appeal of the 2017 FCHR Charge was still pending before the First District Court of Appeal, and shortly before he filed a petition for review of his 2019 FCHR Charge, Makere filed a lawsuit against Allstate in Florida state court.   <u>See</u> Notice of Removal, Ex. 1 (Case No. 3:20-cv-921, Doc. 1-1).   In that lawsuit, Makere asserted claims under the FCRA for race and sex discrimination, as well as retaliation premised on the same allegations described above.   On July 6, 2020, the same day that he filed his

---

[3] Pursuant to the section 760.11(7) of the Florida Statutes, the FCHR must issue a final order by adopting, rejecting, or modifying the recommended order within ninety days. Makere initiated the instant lawsuits and Allstate filed the Motions for dismissal prior to the expiration of the ninety-day period.

petition for review of the 2019 FCHR Charge, Makere also initiated a second lawsuit in Florida state court.   See Notice of Removal, Ex. A (Case No. 3:20-cv-922, Doc. 1-1).   The complaint in this second lawsuit is largely, if not entirely, identical to that filed in the first lawsuit.   On July 15, 2020, Makere filed an amended complaint in both cases adding a claim for race discrimination under 42 U.S.C. § 1981.   See Amended Complaint (Case No. 3:20-cv-921, Doc. 3); Amended Complaint (Case No. 3:20-cv-922, Doc. 3).   On August 12, 2020, Makere filed a lawsuit against Allstate in this Court, alleging claims of discrimination and retaliation under the FCRA, as well as asserting a claim of race discrimination under 42 U.S.C. § 1981.   See Complaint for Employment Discrimination (Doc. 1).   The allegations and claims in this third lawsuit are also identical to those of the state court lawsuits in all material respects.   On August 14, 2020, Allstate removed the two state court actions to this Court where they were consolidated with the lead case before the undersigned as noted above.

## IV.   Florida Civil Rights Act (Counts I – III)

### A. Administrative Requirements

"As a prerequisite to bringing a civil action based upon an alleged violation of the FCRA, [a] claimant is required to file a complaint with the FCHR within 365 days of the alleged violation."   See Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So. 2d 891, 894 (Fla. 2002) (citing Fla. Stat. §

760.11(1)).   Significantly, under the FCRA, an aggrieved party may seek redress in court, "only after the [Florida Commission on Human Relations (FCHR)] determines there is reasonable cause to believe that unlawful discrimination occurred, or the charge remains unresolved for 180 days . . . ." See Sheridan v. State of Fla., Dep't of Health, 182 So. 3d 787, 792 (Fla. 1st Dist. Ct. App. 2016).   If, within the 180-day period, the FCHR makes a determination that there is no reasonable cause, then "the claimant is limited to review before an administrative law judge under Chapter 120, Florida Statutes, and cannot file a civil action unless that review is successful."   Id. (emphasis added) (citing Fla. Stat. § 760.11(7)).   Indeed, "'[o]nce a complainant pursues an administrative hearing, he or she may only file suit if (1) the hearing officer finds a violation of the FCRA; and (2) the commission adopts the hearing officer's recommendation.'"   See Miller, 2013 WL 5566063, at *3 (quoting Santillana v. Fla. State Court Sys., No. 6:09–cv–2095–Orl–19KRS, 2010 WL 271433, at *5 (M.D. Fla. Jan. 15, 2010)).   As such, unless overturned through the administrative process, "a 'no cause' determination precludes a civil suit under the FCRA . . . ."   See Woodham, 829 So. 2d at 895.

## B. Discussion

In Counts I-III of the Complaint, Makere asserts claims of race and sex discrimination, as well as retaliation, under the FCRA.   As described at length above, Makere availed himself of the administrative process required under

Florida law but was ultimately unsuccessful.   Thus, Makere cannot pursue his FCRA claims in this or any court.   See Miller, 2013 WL 5566063, at *4; Hawthorne, 2008 WL 5076991, at *5; Santillana, 2010 WL 271433, at *5-6; see also Woodham, 829 So. 2d at 895.   Makere raises two arguments in an attempt to avoid this result.   First, Makere maintains that the FCHR failed to consider some of his claims based on a finding that Makere did not properly raise them in his 2017 FCHR Charge, or that they were time-barred.   Notably, the record shows that contrary to Makere's argument, the ALJ made substantive findings on numerous allegations that were otherwise untimely or not raised in the underlying Charge.   But regardless, to the extent the FCHR rejected some of Makere's claims as untimely or outside the scope of his Charge, such a determination does not entitle Makere to pursue his FCRA claims in court.   As stated above, unless the FCHR fails to issue a determination in 180 days, a claimant must successfully complete the administrative review process before he can pursue a claim in court.   See Woodham, 829 So. 2d at 895-96; Santillana, 2010 WL 271433, at *5-6.   Makere presents no authority to suggest that a complainant is entitled to bring a civil suit on claims that the FCHR dismissed without reaching the merits and there is nothing in the statute that supports such an interpretation.[4]   Indeed, such an outcome would contravene

---

[4] Rather, if the agency's decision was erroneous, Makere's remedy was to seek judicial review of the agency decision pursuant to Florida's Administrative Procedures Act.   See Santillana, 2010 WL 271433, at *5-6.   Indeed, Makere unsuccessfully pursued such relief in

the purposes of Florida's administrative exhaustion requirement by allowing a claimant to pursue claims in court that he had not properly and timely raised before the FCHR.

Makere also contends that he can proceed with a civil suit because the FCHR failed to render a decision on his 2019 FCHR Charge within the statutory 180-day period. This argument is also unavailing. As set forth above, the FCHR issued a "No Cause" determination regarding the 2019 FCHR Charge on October 18, 2019, within the 180-day period. See Motion, Exs. F-G. When the FCHR later determined that it had sent the notice of its determination to the wrong person, it issued the Amended Notice solely for the purpose of mailing the decision to Makere. See Motion, Ex. H. In the Amended Notice, the FCHR expressly stated that it made "no other changes" to the determination. See id. The FCHR's decision to issue the Amended Notice, without substantive changes and merely to correct the mailing address, does not nullify its initial, timely "No Cause" determination and does not permit Makere to proceed with his FCRA claims in court. See Davis v. Bob Evans Farms, LLC, 649 F. App'x 869, 872-74 (11th Cir. 2016). Thus, Makere's contention that he can pursue a civil suit based on the Amended Notice is without merit. Id.

---

the First District Court of Appeal with respect to his 2017 FCHR Charge. See Motion, Ex. K. Makere is not entitled to bring his FCRA claims anew in state or federal court simply because he does not like the outcome of the administrative process.

In sum, the record establishes that the FCHR rendered timely "No Cause" determinations on Makere's Charges, and Makere did not succeed in his attempts to overturn those determinations through the administrative process. As such, Makere is administratively barred under section 760.11(7) of the Florida Statutes from pursuing his FCRA claims here. The Court will grant the Motion as to Counts I-III of the Complaint and dismiss the FCRA claims in their entirety.

## V.    42 U.S.C. § 1981 (Count IV)

In Count IV, Makere brings a claim titled "Race Discrimination" pursuant to 42 U.S.C. § 1981. See Complaint at 15. "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." Ferrill v. Parker Grp., Inc., 168 F.3d 468, 472 (11th Cir. 1999).[5]   Notably, race discrimination and hostile work

---

[5] Section 1981 provides:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

(b) Make and enforce contracts' defined

For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the

environment claims under the FCRA and § 1981 are governed by the same requirements of proof and analytical framework.  See Edmond v. Univ. of Miami, 441 F. App'x 721, 723 (11th Cir. 2011); Mosley v. MeriStar Mgmt. Co., LLC, 137 F. App'x 248, 251-52 & n.1 (11th Cir. 2005).  However, unlike the FCRA, § 1981 does not contain any administrative exhaustion requirements. See Mathis v. Leggett & Platt, 263 F. App'x 9, 12 (11th Cir. 2008) (stating that "§ 1981 actions are not subject to the administrative exhaustion requirement").

In support of his § 1981 claim, Makere alleges that Allstate treated Makere "less favorably and unfairly compared to his non-black coworkers," and that the race-based offensive conduct was "so severe and pervasive they created a hostile work environment" for Makere.  See Complaint ¶ 61.  Makere also contends that Allstate's "decision to terminate" Makere was racially motivated. Id. ¶ 62.  Significantly, Makere's § 1981 race discrimination and hostile work environment claims are premised on the same factual allegations pled in support of the FCRA claims.  Id. ¶ 60.  Because Makere's claims of race discrimination and harassment during his employment with Allstate and

---

enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.
42 U.S.C. § 1981 (2006).

through his termination were considered and addressed in the administrative proceedings, Allstate contends that Makere's § 1981 claim is subject to dismissal under the doctrine of collateral estoppel.  See Motion at 17-18.  In addition, to the extent Makere brings a § 1981 claim premised on post-termination acts of retaliation, Allstate contends that the Court should dismiss such a claim because: 1) the alleged acts of retaliation occurred after Makere was terminated and therefore do not constitute employment actions, and 2) Makere fails to state a claim in that his allegations do not plausibly link Allstate to the alleged wrongdoing.  See Motion at 19-20.  The Court will address each argument in turn.

### A. Collateral Estoppel

Pursuant to 28 U.S.C. § 1738, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."  See Kremer v. Chem Constr. Corp., 456 U.S. 461, 466 (1982).  As such, "federal courts consistently have applied res judicata and collateral estoppel to causes of action and issues decided by state courts."  Id. at 467 n.6.  "Collateral estoppel, or issue preclusion, requires that once a court decides an issue necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties."  See Barrington v. Fla. Dep't of Health, 112 F. Supp. 2d 1299, 1303 (M.D. Fla. 2000).  This doctrine serves a

critical purpose in the judicial system in that it "'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.'" Id. (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

Significantly, "[a] state court's decision upholding an administrative body's findings has preclusive effect in a subsequent federal court proceeding if: (1) the courts of that state would be bound by the decision; and (2) the state proceedings that produced the decision comported with the requirements of due process." See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) abrogated on other grounds by Lewis v. City of Union City, Ga., 918 F.3d 1213, 1217-18 (11th Cir. 2019); see also Carlisle v. Phenix City Bd. of Educ., 849 F.2d 1376, 1378 (11th Cir. 1988). And indeed, "Florida courts recognize the preclusive effect of state court decisions upholding administrative determinations." See Maniccia, 171 F.3d at 1368. [6] Under Florida law, collateral estoppel applies where:

> "1) the identical issues were presented in a prior proceeding; 2) there was a full and fair opportunity to litigate the issues in the prior proceeding; 3) the issues in the prior litigation were a critical and necessary part of the prior determination; 4) the parties in the two

---

[6] Notably, "when a state agency acts in a judicial capacity and resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate, [federal courts] give the agency's fact-finding the same preclusive effect to which it would be entitled in the state courts," even if the fact-finding was not reviewed by a state court. See Quinn v. Monroe Cnty., 330 F.3d 1320, 1328-29 (11th Cir. 2003) (citing Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986)).

proceedings were identical; and 5) the issues were actually litigated in the prior proceeding."

Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1078–79 (11th Cir. 2013) (quoting Porter v. Saddlebrook Resorts, Inc., 679 So. 2d 1212, 1214-15 (Fla. 2d Dist. Ct. App. 1996)); see also Cataldo v. St. James Epsicopal Sch., 213 F. App'x 966, 968 (11th Cir. 2007) ("For collateral estoppel to apply, Florida law requires that an identical issue be fully litigated by the same parties or their privies and that a final decision be rendered by a court of competent jurisdiction.").

Here, there is no question the identical parties were involved in the state administrative proceedings which were reviewed and affirmed by Florida's First District Court of Appeal, a court of competent jurisdiction. In addition, whether Makere was subjected to race-based discrimination, harassment or retaliation during his employment with Allstate, as well as whether his termination was discriminatory or retaliatory, were critical and necessary issues, fully litigated and resolved in the administrative process. Moreover, discrimination claims under the FCRA and § 1981 are governed by the same analytical framework and requirements of proof, such that the issues resolved in the administrative proceedings and presented in the instant lawsuit are identical. See Beem v. Ferguson, 713 F. App'x 974, 983 (11th Cir. 2018) (explaining that "[i]ssues are 'sufficiently identical' when their elements and requirements 'closely mirror' each other" (citation omitted)). Stated another

way, Makere could not succeed on his § 1981 discrimination claims in this lawsuit in a manner consistent with the decision of the FCHR, which was affirmed by the First District Court of Appeal, that Makere was not subject to race discrimination, harassment or retaliation while he worked at Allstate or in connection with his termination.  See Kremer, 456 U.S. at 479-80.

Moreover, the record establishes that Makere had a full and fair opportunity to litigate these issues in the administrative process.  See id. at 482-95.  Following an investigation of Makere's claims by the FCHR, Makere filed a petition challenging the FCHR's findings and was afforded an evidentiary hearing before an administrative law judge.  The evidentiary hearing spanned four days, during which time Makere presented the testimony of fifteen witnesses, submitted exhibits, and testified on his own behalf.  See Recommended Order at 5-7.  The ALJ extensively considered and addressed the issue of whether Makere was the victim of race discrimination or harassment during his time working at Allstate, and specifically whether Makere's eventual termination was motivated by race discrimination.  After making extensive factual findings, the ALJ determined that Makere had failed to meet his burden to show that he was the victim of race discrimination, harassment or retaliation while he was employed at Allstate.  Likewise, the ALJ found that Makere was terminated for failing to meet the ACP requirements, and not due to any improper discriminatory or retaliatory

motive.  Makere submitted exceptions to the ALJ's findings which the FCHR reviewed and rejected, entering a Final Order adopting the ALJ's findings of fact as well as his conclusions of law in full and dismissing Makere's Petition. See Response, Ex. E.  Makere then appealed this dismissal to Florida's First District Court of Appeal where he obtained review of the Final Order by a Florida appellate court that ultimately affirmed the findings in the Final Order. Id., Ex. K.  As the Supreme Court stated in Kremer, the Court has "no hesitation in concluding that this panoply of procedures, complemented by administrative as well as judicial review, is sufficient under the Due Process Clause."  See Kremer, 456 U.S. at 484; see also Travers v. Jones, 323 F.3d 1294, 1296-97 (11th Cir. 2003); Maniccia, 171 F.3d at 1368; McCrimmon v. Daimler Chrysler Corp., No. 6:05-cv-10-Orl-19DAB, 2005 WL 8159946, at *5 (M.D. Fla. Nov. 9, 2005).

In his Response, Makere asserts that he was not able to fully and fairly litigate his claims because the ALJ preliminarily excluded "30+ issues detailed in [his] FCHR/DOAH charge," preventing Makere from conducting discovery on those issues.  See Response at 20-21.[7]  In support, Makere cites to a May 18,

---

[7] Makere also asserts that he was precluded from addressing the "sex discrimination issue" during the administrative proceedings.  See Response at 20-21.  However, the § 1981 claim set forth in the Complaint is premised solely on race discrimination.  See Complaint ¶¶ 60-62.  Indeed, sex discrimination claims are not cognizable under § 1981.  See Runyon v. McCrary, 427 U.S. 160, 167 (1976) (explaining that § 1981 is "in no way addressed" to categories of selectivity such as gender or religion); see also Pate v. Chilton Cnty. Bd. of Educ., 853 F. Supp. 2d 1117, 1129 (M.D. Ala. 2012) (collecting cases).

2018 order where the ALJ found that some of Makere's allegations concerned untimely acts such that evidence concerning those incidents would be excluded from the evidentiary hearing.  See Response at 5, 20, Ex. G.[8]  Notably, despite this finding, the ALJ actually allowed Makere to present evidence on matters well beyond those timely set forth in the FCHR Charge, including some of those matters which the earlier order had determined would be excluded.  See Recommended Order at 3, 22-23 (allowing evidence on any matters identified in the investigative memorandum, including allegations beyond those described in the Complaint of Discrimination);  id. at 60-61 (stating that [Makere] "spent considerable time discussing matters that he claimed were provided to FCHR, but which were not included in the Complaint of Discrimination or discussed in the [investigative memorandum]"); compare Response, Ex. G at 3 with Recommended Order at 47, 55, 64.  In addition, the ALJ made factual findings

_____

[8] The administrative order on which Makere relies to argue that he was precluded from presenting all of his evidence does not exclude as much evidence as Makere tries to suggest. Although the ALJ determined that many of Makere's allegations concerned time-barred acts, the ALJ nevertheless reasoned that Makere could present evidence concerning many of those acts as they were relevant to prove his other, timely claims.  See, e.g., Response, Ex. G at 2, 5.  Notably, the time-barred acts in the administrative proceedings were those that occurred prior to June 30, 2016. See Recommended Order ¶ 266.  Here, Makere's § 1981 claims are subject to a four-year statute of limitations, such that it appears discrete acts of discrimination prior to July 15, 2016, would likely be subject to a statute of limitations defense in this action as well.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004); McCray v. Wal-Mart Stores, Inc., 377 F. App'x 921, 924 (11th Cir. 2010); see also Amended Complaint (Case Nos. 3:20-cv-921 & 3:20-cv-922) (raising a § 1981 race discrimination case in state court as of July 15, 2020).

"as to as many allegations as are identifiable" so as "to ensure as complete a record as possible for consideration by the FCHR . . . ."   See id. at 23.

Significantly, Makere does not identify any specific issue, relevant to this case, that he did not have an opportunity to present in the administrative proceedings, nor does he explain what discovery he was unable to obtain in those proceedings.   Also, the state appellate court found that Makere failed to establish any "material error in procedure" that may have impaired the "fairness of the proceedings," and concluded that the administrative proceedings "comported with all due process set out" by the relevant Florida statutes.   See Motion, Ex. K at 2.   These determinations by the Florida appellate court are entitled to preclusive effect.   See Barrington, 112 F. Supp. 2d at 1308.   Thus, regardless of the preliminary adverse evidentiary ruling, the record as whole establishes that after a four-day evidentiary hearing, followed by additional administrative review, and then judicial review in the state appellate court, Makere had a full and fair opportunity to litigate his race discrimination claims against Allstate.   See Andela v. Univ. of Miami, 692 F. Supp. 2d 1356, 1372-74 (S.D. Fla. 2010) ("[W]here a plaintiff has received an administrative hearing that was adversarial in nature, then receives additional layers of administrative review, and finally, is afforded an opportunity for judicial review, there is no basis to conclude that the state proceedings failed to comport with due process."); see also Sadler v. Franklin Cnty. Sch. Dist., No.

3:10-CV-26 CDL, 2011 WL 3347864, at *8 (M.D. Ga. Aug. 3, 2011); Barrington, 112 F. Supp. 2d at 1308.

Because Makere's § 1981 race discrimination claim in this case presents the same issues that were fully litigated between these parties, subject to a final decision by a Florida state court of competent jurisdiction, and necessary to that decision, the Court finds that this claim is barred by collateral estoppel.  See Maniccia, 171 F.3d at 1368; Cataldo, 213 F. App'x at 968-69.[9]  Accordingly, to the extent Makere's § 1981 claim is premised on his termination, or alleged acts of discrimination, harassment or retaliation that occurred while he was employed at Allstate, it is due to be dismissed.

---

[9] As noted below, Makere does not specifically raise a § 1981 retaliation claim in his Complaint.  Regardless, to the extent Makere asserts a § 1981 retaliation claim premised on alleged acts of retaliation prior to and including his termination from Allstate, such claims are also collaterally estopped.  The ALJ made numerous factual findings as to the issue of whether Makere was retaliated against during his employment and found that Makere failed to "meet his burden to establish a prima facie case of discrimination by retaliation."  See Recommended Order ¶ 315.  The FCHR adopted those findings in full, see Motion, Ex. E, and that decision was affirmed by Florida's First District Court of Appeal, id., Ex. K.  Notably, the ALJ determined that "[t]he evidence firmly establishes that [Makere] never made any complaint to anyone at Allstate regarding the allegedly discriminatory and harassing conduct that he claims pervaded the workplace."  See Recommended Order ¶ 271; see also id. ¶¶ 209-211 ("During the period of his employment, [Makere] never reported to anyone at Allstate that he believed he was being subjected to racial or sexual discrimination or harassment.").  In the Complaint, Makere identifies three instances when he purportedly reported race discrimination or harassment.  See Complaint ¶¶ 27, 29, 31.  The ALJ heard evidence regarding all three of these instances and found as to each one that Makere had failed to establish that he actually reported or complained of race discrimination, bias or harassment on these occasions.  See Recommended Order ¶¶ 53, 89, 190, 308.  As to the alleged acts of post-termination retaliation in 2018, the Court will address those claims below.

## B. Failure to State a Claim

The Court next considers Makere's allegations regarding purportedly retaliatory events that occurred in 2018, well after Allstate terminated Makere's employment, but while the administrative process was pending.  See Complaint ¶¶ 43-49.  Although Makere does not specifically allege a § 1981 claim premised on retaliation in the Complaint, see Complaint ¶¶ 60-62, the Court must broadly construe the pleadings of a pro se plaintiff such as Makere and therefore will consider whether Makere's allegations are sufficient to state a claim of post-termination retaliation under 42 U.S.C. § 1981.  See Keeler v. Fla. Dep't of Health, 324 F. App'x 850, 858-59 (11th Cir. 2009).[10]

### a. Standard of Review

In ruling on a motion to dismiss for failure to state a claim, the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534

---

[10] Although unclear, Allstate does not appear to contend that Makere's retaliation claims arising out of the 2018 events are collaterally estopped.  See Motion at 8 n.3, 17-20.  Regardless, the administrative records before the Court reflect that the issue of whether Allstate engaged in retaliatory conduct against Makere in 2018 was not addressed in the administrative proceedings.  Although Makere made a vague reference to these events in his 2019 FCHR Charge, the FCHR did not address the events of 2018 as part of its no reasonable cause determination.  See Amended Notice.  Following Makere's petition for review, the ALJ did note that Makere included allegations of unspecified acts in July 2018, but appears to have found that any claim based on those allegations was not cognizable under the FCRA because the acts occurred after Makere's termination.  See id., Ex. J at 1-3.  However, as discussed below, post-termination acts of retaliation can give rise to a claim under § 1981.  Because the issue of whether Allstate retaliated against Makere in 2018 was not actually litigated in the administrative proceedings, collateral estoppel does not bar Makere's § 1981 retaliation claim based on this conduct.

U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).   In addition, all reasonable inferences should be drawn in favor of the plaintiff.   See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).   Nonetheless, the plaintiff must still meet some minimal pleading requirements.   Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).   Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face."   Twombly, 550 U.S. at 570.   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).   Indeed, "the tenet that a court must accept as true all of

the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth."   See Iqbal, 556 U.S. at 678, 680.   Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'"  Id. at 678 (quoting Twombly, 550 U.S. at 570).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   Iqbal, 556 U.S. at 679.   Moreover, when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief."   Id.   And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'"   Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[11] (quoting GJR Invs., Inc. v. Cnty. of Escambia,

---

[11] "Although an unpublished opinion is not binding. . ., it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706); see also Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014).

### b. Discussion

As with discrimination, retaliation claims under § 1981 are analyzed under the same framework as Title VII.   See Edmond, 441 F. App'x at 723.   To establish a retaliation claim under either statute, "a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008). Significantly, "[t]he scope of 'adverse employment actions' is broader in the anti-retaliation context than in the anti-discrimination context."   Saunders v. Emory Healthcare, Inc., 360 F. App'x 110, 115 (11th Cir. 2010).   In the retaliation context, a plaintiff is not required to show "an ultimate employment decision or substantial employment action to establish an adverse action," rather an adverse employment action is one that "might dissuade a reasonable worker from making or supporting a charge of discrimination."   See id.   Also of significance, in Burlington Northern & Santa Fe Railroad Company v. White, the Supreme Court recognized that "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace."   548 U.S. 53, 64 (2006).   Thus,

a law limited to only employment-related actions "would not deter the many forms that effective retaliation can take . . . ."  Id.; see also Robinson v. Shell Oil Co., 519 U.S. 337, 345-46 (1997) (finding that Title VII's antiretaliation provision applies to acts of retaliation against former employees and finding persuasive the EEOC's argument that to hold otherwise would "undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining to the EEOC").   Based on this authority, to the extent Allstate argues that Makere's retaliation claims premised on the alleged 2018 events are due to be dismissed merely because those events allegedly occurred after he was terminated, this argument is unavailing.   See Blair v. Morris Brown Coll., No. 1:04-CV-1156-WBH, 2006 WL 8431375, at *16 (N.D. Ga. July 28, 2006) ("[T]he fact that Plaintiff was no longer employed by Defendant when the actions at issue occurred does not preclude him from asserting a retaliation claim against Defendants.   A former employee may bring an action for post-employment retaliation.") adopted by 2006 WL 8431446, at *1 (N.D. Ga. Sept. 25, 2006); see also Abdullahi v. Prada USA Corp., 520 F.3d 710, 713 (7th Cir. 2008).

The Court next considers whether Makere has alleged a plausible claim for relief based on the post-termination events.   In the Complaint, Makere alleges three different post-termination purported acts of retaliation.   First, Makere contends that Kirk Higgins, an individual he contacted during the

administrative process for purposes of discovery, "attack[ed]" Makere by filing "documents aimed at embarrassing" Makere, and "calling local police departments to try to dig up dirt" on Makere.  See Complaint ¶ 45.  Makere alleges that "Higgins explicitly stated that his actions were motivated by (i) his relationship with [Allstate]; and (ii) [Makere's] demographics."  Id.  According to Makere, Allstate "encouraged Mr. Higgins to file unauthorized documents against [Makere]" and "instruct[ed] him on what to say."  Id. ¶ 48.  Next, Makere alleges that in April of 2018, he was hit by a car while riding his bicycle.  Id. ¶ 46.  He connects this incident to Allstate because two years earlier an Allstate employee had warned Makere to "be careful" on his bicycle.  Id. ¶¶ 46, 25.  Last, Makere maintains that in July 2018, his former employer substantially reduced his retirement benefits.  Id. ¶ 49.  Makere contends that Allstate was behind this action because his former employer notified him at a Florida address that he had never provided to that employer.  Id.

Upon careful consideration, the Court finds that these allegations fail to give rise to a plausible inference that Allstate engaged in post-termination retaliation.  Even accepting as true that an Allstate employee had warned Makere to be careful riding his bicycle, this comment from November 2015, nearly two and a half years prior to the car accident and long before Makere had complained of discrimination, is simply insufficient to plausibly connect

Allstate to the April 2018 collision.[12]   Significantly, Makere does not allege who was driving the car, much less any reason to believe that this person was acting at the behest of Allstate.   See Springs v. U.S. Dep't of Treasury, 567 F. App'x 438, 445 (6th Cir. 2014) (finding bald allegation that plaintiff's former employer conspired with the FBI to harass her in retaliation for filing a civil rights claim was insufficient to plausibly state a claim for relief).   Likewise, the mere fact that Makere's former employer was able to ascertain Makere's Florida address is insufficient to raise even the possibility that Allstate was responsible for that employer's decision to reduce Makere's retirement benefits, much less plausibly allege such a connection.

While Makere goes somewhat further in attempting to connect Allstate to the purported "attacks" from Kirk Higgins, he fails to allege facts suggesting who Higgins is, the nature of his "relationship" with Allstate, or what Allstate's purported "encourage[ment]" or "instruct[ion]" entailed.   See Complaint ¶¶ 45, 48.   While the allegations presented may render it conceivable that Allstate played some role in Higgins' actions, more factual content is necessary to "'nudg[e]" this claim "'across the line from conceivable to plausible.'"   See Iqbal, 556 U.S. at 683 (quoting Twombly, 550 U.S. at 570).   Moreover, to state a claim for retaliation, a plaintiff must allege acts of retaliation that are "material and

---

[12] Makere also asserts that he received death threats and "supplemental taunts," see Complaint ¶ 47, but does not actually allege that Allstate was behind these threats, much less present allegations of fact plausibly connecting Allstate to the threats and taunts.

significant and not trivial." See Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec., 410 F. App'x 243, 246 (11th Cir. 2011); see also Entrekin v. City of Panama City, Fla., 376 F. App'x 987, 995-96 (11th Cir. 2010) ("[T]o sustain a . . . retaliation claim, an employee must show that 'a reasonable employee would have found the challenged action materially adverse,' such that the action would 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" (quoting Burlington, 548 U.S. at 68)).   Indeed, the law protects an individual "not from all retaliation, but from retaliation that produces an injury or harm." See Burlington, 548 U.S. at 67.   While it is possible that the filing of "embarrassing" or "unauthorized" documents and an attempt to "dig up dirt" could constitute materially adverse actions, Makere's allegations are simply too vague to support such an inference.   Accordingly, the Court finds that even broadly construing Makere's § 1981 claim to include a theory of post-termination retaliation, Makere has failed to allege sufficient facts to plausibly state a claim for relief on this basis.

The Court emphasizes, as the Supreme Court stated in Iqbal, that it does "not reject these bald allegations on the ground that they are unrealistic or nonsensical." See Iqbal, 556 U.S. at 681.   Rather, "[i]t is the conclusory nature of [Makere's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." Id.   Thus, while the Court expresses some skepticism that Makere can in good faith allege facts plausibly

connecting these events to Allstate, because Makere is proceeding pro se and has not previously amended his Complaint, the Court will provide Makere with the opportunity to file an amended complaint solely as to his post-termination retaliation claims under 42 U.S.C. § 1981.[13]   See Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (overruling Bank with regard to counseled plaintiffs, but expressly declining to address pro se parties).   Accordingly, it is

**ORDERED:**

1. Defendant's Dispositive Motion to Dismiss Plaintiff's Complaint With Prejudice, and Memorandum of Law in Support Thereof is **GRANTED in part, and DENIED in part**.

---

[13]  Makere is cautioned that the requirements of Rule 11, Federal Rules of Civil Procedure (Rule(s)) are applicable to pro se litigants as well as attorneys.  See Rule 11(b); Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988).   Rule 11 authorizes the imposition of sanctions on a litigant if he files a pleading, written motion, or other paper for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  See Rule 11(b)(1), (c)(1).   In addition, any factual contentions Makere presents to the Court must, to the best of his knowledge, information, and belief, have or be likely to have, evidentiary support.   See Rule 11(b)(3).   Makere should carefully consider whether his allegations comply with the requirements of Rule 11 when preparing his amended complaint. See Patterson, 841 F.2d at 387 ("[P]ro se filings do not serve as an 'impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" (quoting Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986))).

A. The Motion is **DENIED** to the extent Makere's claim of post-termination retaliation pursuant to 42 U.S.C. § 1981 is **dismissed without prejudice**.

B. Otherwise, the Motion is **GRANTED** and Makere's claims are **DISMISSED**.

2. Makere shall have up to and including **February 26, 2021**, to file an amended complaint setting forth his post-termination retaliation claim under 42 U.S.C. § 1981.   Failure to comply with this Order may result in dismissal of this case in its entirety without further notice.

3. Discovery in this case will remain **STAYED** until such time as Makere presents a viable amended complaint.

**DONE AND ORDERED** in Jacksonville, Florida this 8th day of February, 2021.

MARCIA MORALES HOWARD
United States District Judge

lc11

Copies to:

Counsel of Record
Pro Se Party