# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ELIAS MAKERE, FSA, MAA,

        Plaintiff,

v.                                                      Case No.  3:20-cv-905-MMH-LLL

ALLSTATE INSURANCE
COMPANY,

        Defendant.

_____

ELIAS MAKERE, FSA,

        Plaintiff,

v.                                                      Case No.  3:20-cv-921-MMH-LLL

ALLSTATE INSURANCE
COMPANY,

        Defendant.

_____

ELIAS MAKERE,

        Plaintiff,

v.                                                      Case No.  3:20-cv-922-MMH-LLL

ALLSTATE INSURANCE
COMPANY,

        Defendant.

_____/

# O R D E R[1]

**THIS CAUSE** is before the Court on Defendant's Dispositive Motion to Dismiss Plaintiff's Full Verified Civil Complaint with Prejudice and Memorandum of Law in Support Thereof (Doc. 78; Motion) filed on November 23, 2021.[2]  In the Motion, Defendant Allstate Insurance Company moves to dismiss the claims set forth in Plaintiff Elias Makere's Full Verified Civil Complaint (Doc. 73; Third Amended Complaint or TAC) pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)).  Makere filed a response in opposition to the Motion on December 27, 2021.  See Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Full Verified Complaint (Doc. 87; Response).  Significantly, this is Allstate's second motion to dismiss in this action.  The Court previously granted, in part, and denied, in part, a motion to dismiss Makere's initial Complaint for Employment Discrimination (Doc. 1; Initial Complaint).  See Order (Doc. 40; 2021 Order), entered February 8, 2021.[3]  The background and findings in the 2021 Order

---

[1] On August 31, 2020, the Court entered an Order consolidating the above-captioned cases, directing the Clerk of the Court to terminate any pending motions in the later-filed cases, 3:20-cv-921 and 3:20-cv-922, and instructing the parties to make all future filings in the lead case only, 3:20-cv-905.  See Order (Doc. 7) at 2-3.  Accordingly, all citations to the docket in this Order refer to the lead case, 3:20-cv-905, unless otherwise stated.

[2] Allstate separately filed an exhibit in support of the Motion at Docket Entry 80.  See Defendant's Notice of Filing Exhibit Supporting its Dispositive Motion to Dismiss.

[3] Makere v. Allstate Ins. Co., No. 3:20-cv-905-MMH-JRK, 2021 WL 424349, at *1 (M.D. Fla. Feb. 8, 2021).

are significant to the analysis below and the Court will presume the reader's familiarity with the 2021 Order and adopt its defined terms.

## I.    Factual Background

This case arises out of Makere's approximately three-year period of employment with Allstate and its aftermath.  As alleged in the Third Amended Complaint, Makere worked for Allstate from November 18, 2013, until he was terminated on August 12, 2016.  See TAC ¶¶ 8, 43.  Makere, a Black male, alleges that he endured race and sex-based discrimination and harassment from numerous co-workers and supervisors throughout his employment with Allstate.  See id. ¶¶ 8, 12-46.  He contends that he filed internal complaints of discrimination with Allstate and suffered retaliation as a result.  Id. ¶¶ 32-39. Ultimately, Allstate terminated Makere after he failed to pass his ninth actuarial exam, a condition of his continued employment in Allstate's Actuarial Career Program (ACP).  Id. ¶¶ 9-10, 38-43.  Makere maintains that his termination was discriminatory and alleges that other non-Black employees also failed to satisfy the requirements of the ACP and were not terminated.  Id. ¶¶ 44-46.

### A.    2017 FCHR Charge

Following his termination, on June 30, 2017, Makere filed a charge of discrimination and retaliation against Allstate with the FCHR.  The parties participated in extensive administrative proceedings on the 2017 FCHR

Charge which the Court described in detail in the 2021 Order.  See 2021 Order at 8-11.  In brief, the FCHR issued a "No Reasonable Cause" determination on December 15, 2017, at which time Makere promptly petitioned the DOAH for review.  Id. at 8. After substantial motion practice and a lengthy evidentiary hearing, the ALJ ruled against Makere on all claims in a 111-page Recommended Order issued on April 18, 2019.  Id.  The FCHR adopted the ALJ's factual and legal findings and dismissed Makere's claims with prejudice in a Final Order dated June 27, 2019.  Id. at 11.  Makere appealed this decision to Florida's First District Court of Appeal, which found no basis to set aside the FCHR's Final Order and issued a decision affirming it on July 13, 2020. Id.

### B.     Post-Termination Retaliation

Significantly, Makere alleges that Allstate engaged in several acts of retaliation against him while the administrative matter was pending.  See, e.g., TAC ¶ 132; see also Response at 14-15.  The first incident of alleged post-termination retaliation concerns a former Allstate employee, Kirk Higgins. See TAC ¶¶ 57-85.  Makere's allegations reflect that Higgins, a Black male actuary like Makere, worked at Allstate prior to Makere.  Id. ¶¶ 65-67. Although their employment at Allstate did not overlap, Makere appears to believe that Higgins also suffered discrimination during his time there.  See id. ¶¶ 65-72.  The details are unclear, but it appears that during the discovery

phase of the DOAH proceedings, Makere contacted Higgins.  <u>See</u> <u>id.</u> ¶¶ 56-57.

Makere alleges that Higgins "went on attack in response" by filing "documents

aimed at embarrassing [Makere]" and calling the "local police departments to

try to dig up dirt on [Makere]."  <u>See</u> <u>id.</u> ¶ 57.  Makere includes what appear to

be excerpts from Higgins' filings in which Higgins states that he had used

public information to perform a background check on Makere, discovered that

Makere had previously been arrested, and then contacted the police

department to confirm that information.  <u>Id.</u> ¶ 77.  According to the excerpts

in the Third Amended Complaint, Higgins acknowledged that he had found no

evidence that Makere was prosecuted or convicted based on the prior arrests

and stated that he filed the information for the benefit of other potential

witnesses seeking protective orders against subpoenas from Makere.  <u>Id.</u>

Makere characterizes these statements as a "smear campaign."  <u>Id.</u>

Makere alleges that he "believe[s]" Higgins acted at Allstate's behest.  <u>Id.</u>

¶¶ 58, 75-77, 85.  In support, Makere asserts that Higgins called him on March

26, 2018, and told him that he had recently spoken to Allstate employees,

including the employee responsible for terminating Makere, Lisa Henry.  <u>Id.</u>

¶¶ 59-60.  According to Makere, Higgins told him that Henry had recently

made favorable comments about Higgins on a professional networking site.  <u>Id.</u>

¶ 61.  Makere interpreted Higgins' statement as an attempt to "dissuade

[Makere] from litigating his claim against [Allstate]."  <u>Id.</u>  During this call,

Higgins also allegedly told Makere that "he was afraid that [Allstate] would retaliate against him" if he complied with Makere's discovery requests.  Id. ¶ 63.

In addition, Makere points to a June 21, 2018 email from Allstate's counsel to Higgins, on which Makere was copied, concerning the DOAH proceedings.  See TAC ¶¶ 81-83, Ex. F.  According to Makere, Allstate "encouraged" Higgins to file "unlawful" and unauthorized documents on Allstate's behalf and "instructed" Higgins "to avoid writing anything that could negatively impact [Allstate's] accompanying pleading."  Id. ¶¶ 82-83.  However, the email itself, which Makere attaches to the Third Amended Complaint, includes nothing more than a statement of Allstate's position on motions that Higgins had filed or intended to file in the DOAH proceedings opposing Makere's discovery requests.  Id., Ex. F.[4]  Specifically, Allstate's counsel stated that Allstate did not oppose some of the motions and would not object to another so long as it did not interfere with Allstate's discovery efforts.  Ex. F.

The next incident of post-termination retaliation is alleged to have occurred when Makere was hit by a car while riding his bicycle in the Spring

---

[4] On a motion to dismiss, the Court's consideration is limited to those facts contained in the complaint and the attached exhibits.  Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007).  Under Rule 10(c), "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."  Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985); see also Fed. R. Civ. P. 10(c).  As significant here, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."  Griffin, 496 F.3d at 1206.

of 2018.  TAC ¶ 92.  According to Makere, when he "awoke on the grassy median" after the impact, "he immediately thought [Allstate] was behind it." Id. ¶ 92.  In the Third Amended Complaint, Makere attempts to connect Allstate to this incident in three ways.  First, Makere alleges that "[f]rom the outset of the DOAH proceedings, [he] received death threats on the phone; and supplemental taunts through the mail."  See id. ¶ 87.  According to Makere, the threats had a "common theme centered around 'praying to God,'" including a phone call asking, "Do you need someone to pray for your life?" and postcards with similar phrasing.  Id. ¶ 88.  Makere alleges that Higgins used the same "praying to God" phrase when he attempted to dissuade Makere from continuing his lawsuit.  Id.  Second, Makere asserts that in November of 2015, an Allstate employee saw Makere on his bicycle after dark in the Allstate parking lot and allegedly cautioned him, "in an ominous tone," to "'be careful on [his] bike.'"  Id. ¶¶ 29a, 92.  Makere interpreted this statement as a threat, which he contends "came to fruition" when he was hit by a car nearly two and a half years later.  Id.  And third, Makere connects the driver of the car to Allstate because the driver's home was "within 10 minutes" of the Allstate office, "down the street" from the home of an Allstate manager with whom Makere had interacted, and "12 minutes away" from the home of Allstate's former chief executive officer.  Id. ¶ 93.

The third incident of purported post-termination retaliation occurred in July of 2018, when Makere's former employer, Genworth Financial, reduced Makere's retirement benefits. Id. ¶¶ 105, 132b. According to Makere, Allstate was behind this reduction. Id. ¶ 112. Makere connects this event to Allstate because Allstate's attorney made "statements" about Genworth during Makere's depositions and at a hearing. Id. ¶ 108. Although Makere does not describe the statements, he appears to maintain that the information had not come from discovery, such that "[i]t was clear that [Allstate] was communicating with Genworth surreptitiously." Id. ¶ 110. In addition, Makere alleges that he spoke to a benefits coordinator at Genworth who told him that his "dissolved retirement benefits were not part of a company-wide policy," and that Makere "was the only person she knew who suffered dissolution." Id. ¶ 111.[5]

---

[5] The Third Amended Complaint also includes sections titled "Post-Termination Retaliation: Surveillance" and "Plaintiff's Professional Progress and Defendant's Professional Retaliation." See TAC at 31, 34. In the Surveillance section, Makere alleges that Allstate "enlisted people to surveil/investigate" Makere. Id. ¶ 103. Makere identifies a man with "an Allstate T-Shirt" who spoke to Makere at his neighborhood gym and "presented himself as an in-house lawyer." Id. ¶¶ 96-97. According to Makere, another man from the gym "chatted up" Makere and regularly invited him to play basketball. Id. ¶ 100. This man "bumped into [Makere] at the beach" and "revealed that he worked for" Allstate. Id. ¶ 101. Similarly, in the Professional Retaliation section, Makere asserts that an Allstate employee attended the ceremony where Makere received his designation as a Fellow of the Society of Actuaries (FSA). Id. ¶ 114. Although Makere alleges that the employee attended this event at Allstate's behest to harass Makere and interfere with his professional advancement, see id. ¶ 115, he does not allege that any specific acts of purported harassment or interference actually occurred and Makere appears to have successfully obtained his FSA credential. See id. ¶¶ 113-114, Ex. G.

It is unclear whether Makere contends that these incidents, individually, also constitute actionable retaliatory conduct. See Response at 14-15. Notably, unlike the three

### C.    2019 FCHR Charge

Following these purported acts of retaliation, and while the 2017 FCHR

Charge was working its way through the administrative process, Makere filed

a second charge with the FCHR in 2019.   See TAC ¶ 7a.   Because it is

particularly relevant to the analysis below, the Court sets out in full its account

of the 2019 FCHR Charge from the 2021 Order:

> In the 2019 FCHR Charge, Makere checked the boxes for
> discrimination based on race, color, sex, and retaliation. In the
> narrative portion of the Charge, Makere primarily addressed his
> termination, although he also noted "5 Years of racial/sexual
> harassment," to include "Racist Dolls, Racist Characterizations,"
> "Date    Requests    (Dinner-&-a-Movie),"    and    "Targeted
> discrimination."   In addition, he stated that Allstate retaliated
> against him for complaining, and that "[t]he most recent act of
> retaliation occurred in July 2018."   He did not identify or describe
> the alleged July 2018 act of retaliation in the Charge.
>
> On October 18, 2019, the FCHR issued a "No Reasonable Cause"
> determination, finding that the "facts and claims are identical" to
> the 2017 FCHR Charge, and further that the claims are untimely
> as they are "based on events that took place in 2016."   On June 1,
> 2020, the FCHR issued an amended notice.   In the Amended
> Notice, the FCHR explained that the previous notice was mailed
> to Makere's "legal representative in a former matter," and as a
> result, the FCHR issued the amended determination "addressed
> directly to [Makere] at his mailing address on record."   The FCHR
> further stated that "[n]o other changes were made" to its October

___

incidents detailed above, Makere does not specifically refer to "surveillance" or "professional
retaliation" in summarizing the "ultimate facts" of his claims.  See id. ¶ 132; see also id. ¶¶
161, 182. Regardless, as alleged, these innocuous encounters with other Allstate employees
do not constitute the type of "materially adverse" conduct that might dissuade "'a reasonable
worker from making or supporting a charge of discrimination.'"  See Burlington N. & Santa
Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006) (citation omitted).  And Makere's contention
that these encounters reflect Allstate's attempt to surveil or sabotage him is not a reasonable
inference from the facts alleged.  See infra Part III (explaining the standard of review).

18, 2019 determination.  The Amended Notice informed Makere that he had thirty-five days from the date the amended notice was signed, June 1, 2020, to file a petition seeking an administrative hearing.

Makere filed his petition with the DOAH on July 6, 2020.  On July 7, 2020, the ALJ entered an Order Relinquishing Jurisdiction and Closing File in which he found that:

> There are no disputed issues of material fact for disposition that lead to any conclusion but that, applying the doctrines of res judicata, collateral estoppel, and administrative finality, the [2019 FCHR Charge] should be dismissed with prejudice. It is clear from the face of the [2019 FCHR Charge] that there are no amendments that would overcome the fact that each of the allegations contained therein have been fully litigated, and that any proposed amendment would be futile.

> With respect to the unspecified acts of retaliation in July 2018, the ALJ stated that "there can be no dispute that the last possible discriminatory and unlawful employment practice that could have been taken by Allstate would have been the act of terminating [Makere]," which occurred in 2016.  The ALJ reasoned that "[s]ince [Makere] was terminated on September 12, 2016, there could be no significant change in [Makere's] circumstances that would be cognizable pursuant to [the FCRA].  As such, the ALJ relinquished jurisdiction to the FCHR "for entry of a final order dismissing" Makere's petition. Neither party submits any evidence as to whether or when that order was entered.

See 2021 Order at 11-13 (internal citations omitted).  In July and August of 2020, Makere initiated three lawsuits against Allstate which, as noted above, are consolidated in this case.  The Court turns next to the procedural history of the instant matter.

-10-

## II.    Procedural History

In his Initial Complaint, Makere asserted claims against Allstate under the Florida Civil Rights Act (FCRA), section 760.01-760.11 of the Florida Statutes, for race and sex-based employment discrimination, as well as unlawful retaliation.  See Initial Complaint at 14.  He also brought a claim for race discrimination pursuant to 42 U.S.C. § 1981.  Id. at 15.  Given his pro se status, the Court broadly construed Makere's § 1981 claim to include retaliation as well.  Significantly, the alleged acts of retaliation occurred both before and after his termination.  In the 2021 Order, the Court determined that all of Makere's FCRA claims were procedurally barred.  See 2021 Order at 14-18.  In addition, the Court found that collateral estoppel barred Makere's § 1981 claim to the extent it was premised "on his termination, or alleged acts of discrimination, harassment, or retaliation that occurred while he was employed at Allstate . . . ."  Id. at 18-27.  Based on these findings, the Court dismissed those § 1981 claims and the FCRA claims with prejudice.  Id. at 37.

However, to the extent Makere asserted a § 1981 retaliation claim premised on alleged acts of post-termination retaliation, the Court determined that collateral estoppel did not bar that claim.  Id. at 28 n.10.  Nevertheless, the Court found that Makere's allegations were too vague and conclusory to state a claim for relief.  Id. at 32-36.  Consistent with Eleventh Circuit precedent, in light of his pro se status, the Court dismissed that claim without

prejudice and provided Makere with an opportunity to file an amended complaint "setting forth his post-termination retaliation claim under 42 U.S.C. § 1981." See id. at 37.  Accordingly, on February 26, 2021, Makere filed an amended complaint (Doc. 44) and then, purportedly after proofreading, he filed a second amended complaint a few days later.  See Amended Complaint (Verified) (Doc. 45; Second Amended Complaint), filed March 1, 2021.  In the Second Amended Complaint, Makere asserted a § 1981 claim for retaliation and a § 1981 "pattern & practice of retaliation" claim.  See Second Amended Complaint at 37-38.

On March 9, 2021, Makere initiated a new federal lawsuit against Allstate.  See Makere v. Allstate Insurance Co., No. 3:21-cv-242-MMH-JBT (M.D. Fla. Mar. 9, 2021) (Makere IV).  In Makere IV, Makere filed a five-count Verified Complaint (Makere IV, Doc. 1) in which he raised claims of race, sex, and color discrimination, as well as retaliation and a "pattern & practice of retaliation" against Allstate pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq.  Upon review of Makere's request to proceed in forma pauperis, the assigned Magistrate Judge observed that Makere IV "involve[d] identical factual allegations against the same Defendant" as this matter.  See Makere IV, ECF No. 6 at 3 (M.D. Fla. entered Apr. 12, 2021) (order deferring ruling on application to proceed in forma pauperis).  The Magistrate Judge cited the rule against claim splitting and

explained to Makere that if he wished to assert his Title VII claims, he must do so by seeking leave to amend the pleadings in his already pending lawsuit against Allstate.  See Makere IV, ECF No. 6 at 3-6.  Makere then filed a motion for leave to amend in the instant action, which the Magistrate Judge assigned to this case granted on October 13, 2021.  See Order (Doc. 70).[6]  Accordingly, on November 6, 2021, Makere filed the Third Amended Complaint, which is the operative pleading at this time.

In the first four counts of the Third Amended Complaint, Makere reasserts his FCRA discrimination and retaliation claims.  See TAC at 46-48.[7] In Count V, Makere brings a claim for pay discrimination in violation of the Equal Pay Act (EPA), 29 U.S.C. § 206.  Id. at 48-49.  Next, in Counts VI and VII, Makere reasserts claims of race discrimination and retaliation under §

---

[6] Notably, the Magistrate Judge granted leave to amend solely because he found that Allstate's arguments in opposition to amendment would be "better addressed in a procedural posture of a dispositive motion and response."  See Order (Doc. 70) at 3.

[7] As to Counts I (race), II (sex), and IV (retaliation), the Court previously dismissed these FCRA claims with prejudice in the 2021 Order.  See 2021 Order at 14-18; see also Rule 41(b).  As such, Makere may not reassert them in this or any other action.  See Daker v. Comm'r, Ga. Dep't of Corr., 694 F. App'x 765, 767 (11th Cir. 2017) ("A dismissal with prejudice bars the litigant from refiling the same complaint . . . ."); see also Griham v. United States, 389 F. Supp. 3d 986, 992 (N.D. Ala. 2019) ("It has long been recognized that a dismissal 'with prejudice' denotes the adjudication of a claim 'in a way that finally disposes of a party's claim and bars any future action on that claim.' (quoting With Prejudice, Black's Law Dictionary (11th ed. 2019))).  Likewise, as to Count III (color), Makere cannot circumvent the Court's prior order merely by repackaging his FCRA race discrimination claim as one premised on "color."  Regardless, even to the extent Makere asserts a distinct FCRA "color discrimination" claim, it is procedurally barred for the same reasons discussed in the 2021 Order.  Accordingly, Counts I-IV are due to be dismissed without further discussion.

1981, and in Count VIII, he asserts a claim pursuant to 42 U.S.C. § 1981a titled "Intentional Discrimination."[8]  Id. at 49-51.  The claim in Count IX is for "Deprivation of Rights" under 42 U.S.C. § 1985.  Id. at 51-52.  In Counts X-XIII, Makere raises Title VII claims based on race, sex, and color discrimination, as well as retaliation.  Id. at 52-54.  And last, in Count XIV, Makere asserts a Title VII claim premised on a "Pattern & Practice of Retaliation."  Id. at 54-55.  Allstate moves to dismiss all of these claims.

## III.   Standard of Review

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).   In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Randall v. Scott, 610

---

[8] Makere's § 1981 race discrimination claim (Count VI) is due to be dismissed as it, too, was dismissed with prejudice in the 2021 Order.  See 2021 Order at 18-27.  With regard to the retaliation claim set forth Count VII, the Court will consider only whether Makere has stated a claim for retaliation premised on post-termination acts of retaliation.  To the extent Makere attempts to reassert a § 1981 retaliation claim premised on acts that occurred during his employment with Allstate, this claim was dismissed with prejudice in the 2021 Order.  Id. at 27, 37.

As to Count VIII, Makere's separate claim under 42 U.S.C. § 1981a, this claim is due to be dismissed because § 1981a concerns the damages available under Title VII and "does not provide an independent cause of action."  See Riles v. Augusta-Richmond Cnty. Comm'n, No. CV 116-214, 2017 WL 3597488, at *2 (S.D. Ga. Aug. 21, 2017); see also King v. Fulton Cnty., Ga., No. 1:08-cv-3729-TWT, 2009 WL 1322341, at *1-2 (N.D. Ga. May 11, 2009) (explaining the difference between 42 U.S.C. § 1981 and 42 U.S.C. § 1981a).

F.3d 701, 705 (11th Cir. 2010).  Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" (citations and quotations omitted)).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."  Iqbal, 556 U.S. at 678-

79. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Moreover, when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." Id. (citation omitted). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[9] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall,

---

[9] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

610 F.3d at 706); see also Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014).

## IV.    Discussion

### A.    Count V: Equal Pay Act

In the Motion, Allstate argues that Makere's claim under the EPA is barred by the applicable two- or at most three-year statute of limitations. See Motion at 8-9. Allstate contends that Makere did not raise an EPA claim until filing the Third Amended Complaint on November 6, 2021, more than five years after his termination from Allstate in 2016. Id. In Response, Makere contends that he first raised the pay disparity issue in 2017, well within the two- or three-year statute of limitations. See Response at 5. Makere's argument appears to rely on allegations he made about unequal pay in his petition for relief to the DOAH. Id., Ex. I. According to Makere, his reliance specifically on the EPA in the Third Amended Complaint was a "formality" and the "substantive facts neither changed nor ran anew." Id. Thus, Makere contends that his EPA claim "relates back" to his "originating complaint," by which he apparently means his DOAH petition. Id. at 6.

The applicable statute of limitations for an EPA claim is set forth in 29 U.S.C. § 255(a). See Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1572 (11th Cir. 1988). Pursuant to this statutory provision, "every [cause of] action shall be forever barred unless commenced within two years after the cause of action

accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." See 29 U.S.C. § 255(a). The Court will assume, without deciding, that Makere brings a claim for a willful violation and the three-year statute of limitations applies.

It is undisputed that Allstate terminated Makere's employment in 2016. Thus, the statutory time limits for filing a claim under the EPA had long expired by November 6, 2021, when Makere first raised this cause of action in the Third Amended Complaint. Recognizing this, Makere cites Rule 15(c) and argues that his claim is not untimely based on the relation back doctrine. However, even assuming Makere's EPA claim relates back to the outset of this lawsuit, it is still untimely. Makere initiated this case on August 12, 2020,[10] four years from the date of his termination from Allstate.

To the extent Makere argues that he timely asserted his EPA claim based on allegations he made during the administrative proceedings, this argument is unavailing. Notably, Makere provides no authority for the proposition that the relation back doctrine encompasses administrative complaints, and the language of the Rule refutes that contention. Rule 15(c) allows relation back only to the date of the "original pleading," which in this context refers to "the complaint in an ordinary civil case . . . ." See Mayle v.

---

[10] Even if the Court considers the consolidated cases, Makere initiated those actions in state court in the summer of 2020, still well over three years after his termination.

-18-

<u>Felix</u>, 545 U.S. 644, 655 (2005).[11]  Indeed, the statute itself requires the <u>action</u> to be <u>commenced</u> within two, or at most three, years.  <u>See</u> 29 U.S.C. § 255(a).  Pursuant to Rule 3, "[a] civil action is commenced by filing a complaint <u>with the court</u>."  <u>See</u> Rule 3 (emphasis added).  Makere did not file a complaint with any state or federal court until 2020, and thus, his EPA claim will be dismissed as time-barred.[12]

## B.    Count VII: § 1981 Retaliation

To establish a retaliation claim under § 1981, "a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events."  <u>See</u> <u>Goldsmith v. Bagby Elevator Co., Inc.</u>, 513 F.3d 1261, 1277 (11th Cir. 2008).[13]

---

[11] Indeed, the Federal Rules of Civil Procedure define the word "pleading" in Rule 7, which identifies the seven types of "pleadings" allowed in federal court, one of which is a complaint.  <u>See</u> Rule 7(a)(1).

[12] To the extent Makere's argument can be interpreted as suggesting that the pending administrative proceedings tolled the EPA statute of limitations, the Court notes that administrative exhaustion is not required for EPA claims and as such, the filing of those charges did not toll the statute of limitations for his EPA claim.  <u>See</u> <u>Matthews v. Clayton Cnty. Pub. Schs.</u>, No. 1:18-CV-04227-ELR-CMS, 2019 WL 13273267, at *6 n.4 (N.D. Ga. Feb. 20, 2019) <u>adopted by</u> 2019 WL 13273268, at *1 (N.D. Ga. Mar. 26, 2019); <u>see also</u> <u>Atkins v. Coca Cola Enters., Inc.</u>, No. 07 C 1038, 2007 WL 4219196, at *4 (N.D. Ill. Nov. 28, 2007); <u>Manko v. Deutsche Bank</u>, No. 02 Civ 10180(TPG), 2004 WL 574659, at *7 (S.D.N.Y. Mar. 22, 2004); <u>cf.</u> <u>Johnson v. Ry. Express Agency, Inc.</u>, 421 U.S. 454, 465 (1975) (finding that pending EEOC proceedings did not toll the statute of limitations for the petitioner's § 1981 claim because the § 1981 remedy is "separate from and independent of" Title VII procedures, and thus the petitioner could have filed his § 1981 claim at any time and "in a very real sense" had "slept on his § 1981 rights").

[13] "The same substantive analysis applies to claims of retaliation brought under Title VII and § 1981."  <u>See</u> <u>Stinson v. Public Serv. Tel. Co.</u>, 486 F. App'x 8, 10 n.2 (11th Cir. 2012); <u>Goldsmith</u>, 513 F.3d at 1277.  As such, the Court relies on cases arising under either statute.

Significantly, actionable retaliation is not limited to "ultimate employment decisions" and "extends beyond workplace-related or employment-related retaliatory acts and harm . . . ." See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). Nevertheless, to state a claim for retaliation, a plaintiff must still allege acts of retaliation that are "material and significant and not trivial." See Ekokotu v. Fed. Exp. Corp., 408 F. App'x 331, 337 (11th Cir. 2011) (citing Burlington, 548 U.S. at 68). "To constitute a materially adverse action, the employer's action must be materially adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable worker from making or supporting a discrimination charge." See Jiles v. United Parcel Serv., Inc., 360 F. App'x 61, 66 (11th Cir. 2010) (citing Burlington, 548 U.S. at 68); see also Entrekin v. City of Panama City, Fla., 376 F. App'x 987, 995-96 (11th Cir. 2010). Indeed, the law protects an individual "not from all retaliation, but from retaliation that produces an injury or harm." See Burlington, 548 U.S. at 67.

In both the Initial Complaint and the Third Amended Complaint, Makere identifies the same three primary acts of purported post-termination retaliation: 1) the Higgins filings, 2) the car-bicycle collision, and 3) his former employer's reduction of his retirement benefits. See 2021 Order at 5-6; see also TAC ¶¶ 132, 161, 182. Significantly, all of these incidents stem from the actions of third parties with no readily apparent connection to Allstate. Thus,

while the causal-relationship element in a retaliation claim is construed broadly, all of these incidents, on their face, appear "completely unrelated" to Allstate and Makere's protected conduct.  See Ekokotu, 408 F. App'x at 338. Nevertheless, Makere asserts that these third parties were acting at Allstate's behest.  Upon review of the Initial Complaint, the Court found that Makere's allegations were insufficient to connect Allstate to any of the alleged retaliatory actions.  2021 Order at 33-35.  Having now reviewed the Third Amended Complaint as well, the Court finds that Makere fails to correct this deficiency.

As to the car collision, the Court previously found that Makere's allegations in the Initial Complaint were insufficient to plausibly connect Allstate to the incident, particularly given the absence of any allegations about who was driving the car and whether there was reason to believe that the person was acting on Allstate's behalf.  See 2021 Order at 33-34.  In the Third Amended Complaint, Makere attempts to fill this gap by providing the name of the driver and alleging that he lives in proximity to the Allstate office ("10 minutes"), an Allstate manager ("down the street"), and Allstate's CEO at the time ("12 minutes").  See TAC ¶ 93.  But this exceedingly tenuous connection does not provide a factual basis from which to infer that Allstate was in any way connected to the car collision, especially given the lack of any allegations about where the accident itself took place.  Makere's other allegations—

regarding phone calls and postcards from unidentified individuals offering to pray for him, and an occasion over two years earlier when an Allstate employee warned Makere to "be careful on [his] bike"—also fall far short of closing the gap between the conceivable and the plausible.  See Iqbal, 556 U.S. at 680. Indeed, even aside from the question of Allstate's involvement, there is nothing in the Third Amended Complaint that lends support to Makere's contention that the collision was intentional.  For example, relevant factual allegations about the circumstances of the collision itself—how it occurred or who was at fault—are noticeably absent.

While the Court must draw reasonable inferences in Makere's favor, the Court is not required to draw Makere's inferences.  See Aldana v. Del Monte Fresh Produce, N.A. Inc., 416 F.3d 1242, 1248 (11th Cir. 2005).  And the Court is allowed to draw on its "judicial experience and common sense" in determining whether a complaint states a plausible claim for relief.  Iqbal, 556 at 679.  Absent any factual allegations from which to infer that the driver of the car intentionally collided with Makere, and with only highly speculative allegations that Allstate was in any way connected to the accident or the driver, Makere's contention that Allstate enlisted the driver of the car to "maim, injure, and/or kill" Makere is nothing more than a bald assertion insufficient to overcome a Rule 12(b)(6) motion.  See TAC ¶ 95; Aldana, 416 F.3d at 1248 ("'Bald assertions' will not overcome a Rule 12(b)(6) motion." (citation

omitted)); <u>see</u> <u>also</u> <u>Twombly</u>, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief about the speculative level . . . .").

Makere also alleges, as he did in the Initial Complaint, that his former employer, Genworth Financial, reduced his retirement benefits during the pendency of the DOAH proceedings. <u>See</u> TAC ¶ 105. Makere points out that Genworth mailed him the notice despite the fact that he "had never given Genworth his Florida address." <u>Id.</u> ¶¶ 105-06. In the 2021 Order, the Court explained that "the mere fact that Makere's former employer was able to ascertain Makere's Florida address is insufficient to raise even the possibility that Allstate was responsible for that employer's decision to reduce Makere's retirement benefits, much less plausibly allege such a connection." <u>See</u> 2021 Order at 34. In the Third Amended Complaint, Makere attempts to buttress this purported link between Genworth and Allstate with new allegations that Allstate's legal counsel "made several statements" about Genworth during Makere's depositions in the administrative proceedings. <u>See</u> TAC ¶ 108. Broadly construing his allegations, Makere appears to contend that counsel's "statements" about Genworth had not come from Makere, or from information disclosed in discovery, such that Allstate must have been communicating with Genworth directly. <u>Id.</u> ¶¶ 107-10. But significantly, Makere does not describe the nature or content of the statements. As such, Makere's inference that Allstate not only must have been communicating with Genworth, but also, that

it did so in order to induce Genworth to retaliate against Makere is entirely speculative.

Makere also asserts that he "reached out to Genworth to understand their actions," and was told by the benefits coordinator that the action was not part of a "company-wide policy" and that "he was the only person she knew" whose benefits were reduced. Id. ¶ 111. But notably, Makere does not allege whether Genworth provided him with a reason for the reduction in benefits and if so, what the reason was and why Makere rejects it. As such, Makere's allegations leave open any number of innocent alternative explanations for his former employer's actions. On the facts alleged, it is simply not plausible to infer that Allstate was in some way involved. See Iqbal, 556 U.S. at 682 ("As between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." (internal citation omitted)). In sum, the Court finds that Makere's allegations remain entirely too vague and conclusory to give rise to a plausible inference that Allstate is in any way connected to, or responsible for, Genworth's decision to reduce Makere's retirement benefits.

As to Higgins, Makere alleges that Allstate "enlisted its former employee to attack [Makere] for filing his discrimination lawsuit." See TAC ¶ 85. In the 2021 Order, the Court found that Makere's allegations might render it

conceivable that Allstate played some role in Higgins' actions, but that more was needed to establish plausibility.  <u>See</u> 2021 Order at 34.  For example, the Court noted the absence of any allegations "suggesting who Higgins is, the nature of his 'relationship' with Allstate, or what Allstate's purported 'encourage[ment]' or 'instruct[ion]' entailed."  <u>Id.</u>  The Court also determined that Makere's vague allegations of wrongdoing were insufficient to demonstrate the type of "material and significant" harm required to state a claim for retaliation.  <u>Id.</u> at 34-35.

In the Third Amended Complaint, Makere elaborates on Higgins' background, relationship with Allstate, and the challenged conduct.  But upon review, Makere's allegations that Higgins acted at Allstate's direction remain exceedingly weak.  Notably, Higgins filed the challenged statements in the administrative proceedings only after <u>Makere</u> contacted <u>Higgins</u> for discovery purposes.  <u>See</u> TAC ¶¶ 56-57.  And the email purportedly demonstrating Allstate's instruction and encouragement includes nothing more than a routine statement of Allstate's position on the motions Higgins filed or intended to file in opposition to Makere's discovery requests.  <u>Id.</u> ¶ 83, Ex. F.  In their entirety, the Court finds that there is nothing about the facts alleged in the Third Amended Complaint that gives rise to the inference that Higgins acted at Allstate's behest as opposed to the far more likely explanation that he did so out of his own desire not to be involved in Makere's lawsuit.

Moreover, Higgins' purported "attack" on Makere is entirely trivial. Although Makere characterizes Higgins' statements about his prior arrests as a "smear campaign," id. ¶ 77, Makere does not allege that anything Higgins wrote was false or misleading, nor does he allege that Higgins made any threats against him. Indeed, Makere does not allege that he was injured or harmed in any way by Higgins' actions. See Burlington, 548 U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). While the Court recognizes that "it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse,'" see Crawford v. Carroll, 529 F.3d 961, 973 n.13 (11th Cir. 2008), the statements attributed to Higgins in the Third Amended Complaint fall well under that threshold.

In reaching this determination, the Court finds the context in which Higgins' statements were made to be particularly significant. See Burlington, 548 U.S. at 69 ("[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."). The purported retaliation occurred on the record in the course of administrative proceedings and subject to the oversight of the ALJ. Notably, other courts have rejected retaliation claims premised on litigation conduct in similar contexts, recognizing that such matters are more appropriately addressed pursuant to

court rules by the presiding judge.  See Baird v. Gotbaum, 888 F. Supp. 2d 63, 74 (D.D.C. 2012) ("Perhaps recognizing the unseemly situation that would be created if the Title VII judge had to evaluate the conduct of litigators before a different judge, courts have wisely found it is 'a matter to be resolved pursuant to court rules, not by Title VII.'" (quoting McKenzie v. Ill Dep't of Transp., 92 F.3d 473, 486 (7th Cir. 1996))); see also Steffes v. Stepan Co., 144 F.3d 1070, 1075-76 (7th Cir. 1998) ("[I]t will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by [Title VII or the ADA]."); Salanoa v. Hawaiian Elec. Co., No. 21-00300 JMS-RT, 2022 WL 280936, at *14 (D. Haw. Jan. 31, 2022) (rejecting retaliation claim premised on employer's actions in worker's compensation proceedings, noting that the court "found little authority holding that litigation tactics can themselves constitute a violation of the ADA or of other federal anti-discrimination statutes"); Franken v. McCarthy, No. 2:19-CV-2172 AWI PEG, 2020 WL 2615021, at *4 (E.D. Cal. May 22, 2020) (finding false or perjured testimony during administrative proceedings does not constitute actionable retaliation under Title VII).  The Court finds the analysis in these cases persuasive and applicable here.  Thus, even assuming Allstate was somehow responsible, given the trivial nature of Higgins' statements and the context in which they were made, the Court is convinced that the Higgins' filings do not constitute actionable retaliation.

In sum, Makere fails to state a claim for post-termination retaliation because he attempts to hold Allstate responsible for the independent actions of third parties based on nothing more than unwarranted deductions from innocuous facts, conclusory assertions of wrongdoing, and rank speculation. Notably, Makere is proceeding on his Third Amended Complaint and as such has had more than ample opportunity to present any and all factual allegations that might have supported these claims. As to Higgins, the claim fails for the additional reason that the conduct alleged is trivial and non-actionable. In light of the foregoing, the Court finds that the post-termination retaliation claims in Count VII are due to be dismissed for failure to state a claim.

### C.   Count IX: § 1985

Next, the Court turns to Makere's § 1985 claim for "Deprivation of Rights." See TAC ¶¶ 165-168. Although the exact contours are difficult to discern, Makere's claim appears to be that Allstate conspired with numerous others, including current and former employees, its lawyers, "state officers," and "state agencies" to deprive Makere "of a full and fair opportunity to litigate his case." See TAC ¶¶ 166-67. In the Motion, Allstate argues that this claim is due to be dismissed because the alleged conspiracy does not fall within the scope of § 1985. See Motion at 17-20. Specifically, Allstate argues that the conspiracy does not involve a federal officer for purposes of § 1985(1), federal court for purposes of § 1985(2), or constitutional rights protected against

private impairment for purposes of § 1985(3).  Id.  However, Allstate fails to address the second part of § 1985(2) which "applies to conspiracies to obstruct the course of justice in state courts . . . ."  See Kush v. Rutledge, 460 U.S. 719, 725 (1983).  Nevertheless, the Court need not determine whether Makere's conspiracy claim could theoretically fall within the scope of § 1985 because the claim fails for a more fundamental reason—the Third Amended Complaint is devoid of any facts that plausibly demonstrate the existence of an agreement.

To state a claim under § 1985, Makere must allege the existence of a conspiracy.  See Kush, 460 U.S. at 724 (discussing the types of conspiracies proscribed by this statute).  The "linchpin" of any conspiracy is the existence of an agreement.  See Bailey v. Bd. of Cnty. Com'rs of Alachua Cnty., Fla., 956 F.2d 1112, 1122 (11th Cir. 1992); Mickens v. Tenth Judicial Circuit, 181 F. App'x 865, 876 (11th Cir. 2006) ("The core of a conspiracy claim is an agreement between the parties . . . .").  Thus, regardless of which subsection applies, "the plaintiff must provide sufficient allegations to make plausible that there was a 'meeting of the minds between two or more persons to accomplish [the] common and unlawful plan.'"  See Jimenez v. Wizel, 644 F. App'x 868, 873 (11th Cir. 2016) (quoting McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000)).  "[W]here the plaintiff fails to allege an agreement, the pleading is deficient and subject to dismissal."  Mickens, 181 F. App'x at 876 (citing Bailey, 956 F.2d at 1122).  And significantly, "[i]n civil rights and

conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." Kearson v. S. Bell Tel. & Telegraph Co., 763 F.2d 405, 407 (11th Cir. 1985).

Here, to the extent Makere's conspiracy claim is discernible at all, his allegations are plainly too vague and conclusory to support the existence of an agreement between Allstate and the purported co-conspirators, whoever they may be.  For example, in addition to the insufficient allegations of purported retaliation, Makere alleges that Allstate "pressure[ed]" the FCHR, see TAC ¶ 128a., "gave the FCHR something of value in exchange for its acts & omissions," id. ¶ 128c., and otherwise somehow "unlawfully got the FCHR to deprive Plaintiff of his constitutional rights . . . ." Id. ¶ 134.  Makere also appears to contend that both Allstate and the ALJ made "perjured" statements about whether Makere's administrative claims included sex discrimination. Id. ¶¶ 94b.iii., 123b., 166.  Such "naked assertions devoid of further factual enhancement" are entirely inadequate to state a claim for conspiracy.  See Iqbal, 556 U.S. at 678; Jimenez, 644 F. App'x at 874; see also Williams v. Brooks Trucking Co., Inc. of Memphis, 757 F. App'x 790, 795 (11th Cir. 2018) ("The private Defendants's [sic] defense of Plaintiff's personal injury action before Judge Rumer represents neither reaching an understanding nor willful participation with Judge Rumer in a conspiracy to subvert Plaintiff's rights."). As such, Count IX is due to be dismissed as well.

### D.     Counts X-XIII: Title VII[14]

In Counts X-XIII, Makere asserts race, sex, and color discrimination claims, as well as retaliation claims, pursuant to Title VII.  Makere's Title VII claims are premised on entirely the same conduct as his FCRA and § 1981 claims.  In the Motion, Allstate moves to dismiss these claims as time-barred based on its contention that Makere failed to file his Title VII claims within ninety days of receiving the EEOC's right-to-sue notice.  See Motion at 20.[15] Specifically, Allstate points to the EEOC Right-to-Sue Notice dated January 23, 2020, which is attached to the Third Amended Complaint, see TAC, Ex. A, and argues that Makere did not raise any Title VII claims until more than a year later, on March 9, 2021, when he initiated Makere IV.  See Motion at 21-22; see also Makere IV, ECF No. 1.  Allstate argues that although Makere maintains he did not receive the Right-to-Sue Notice, it was his burden to

---

[14] In Count XIV, Makere asserts a "Pattern & Practice" claim of retaliation under Title VII.  Allstate argues that this claim is due to be dismissed because Makere cannot pursue a private pattern and practice claim as an individual.  See Motion at 23-24.  Makere does not respond to this argument in his Response.  As such, and because the Court finds Allstate's argument to be well-taken, the Court will dismiss Count XIV.  See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 967-69 (11th Cir. 2008) abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); see also E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000).

[15] To the extent Makere asserts post-termination retaliation claims under Title VII, Allstate also moves to dismiss those claims for failure to state a claim.  See Motion at 11-16. The Court determined above that Makere's § 1981 post-termination retaliation claims are due to be dismissed for failure to state a claim.  Because § 1981 and Title VII are governed by the same legal standards, the Court's analysis as to the § 1981 claims is equally applicable to Makere's Title VII claims.  As such, the Court will dismiss Makere's Title VII post-termination retaliation claims as well.

advise the EEOC of any changes in his address.  <u>See</u> Motion at 22.  Regardless, Allstate contends that Makere was aware of the Right-to-Sue Notice by at least August 21, 2020, when Allstate referred to the Notice in its first motion to dismiss.  <u>See</u> <u>id.</u> at 22-23.  In Response, Makere argues that the EEOC mailed the Right-to-Sue Notice to the wrong person, as the FCHR had previously done with its No Reasonable Cause determination on the 2019 FCHR Charge.  <u>See</u> Response at 6-7; <u>see</u> <u>also</u> 2021 Order at 12.  Makere maintains that he is not responsible for the "botched mailing" because his address never changed.  <u>See</u> Response at 7.

"A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate 'if it is apparent from the face of the complaint that the claim is time-barred.'"  <u>See</u> <u>Gonsalvez v. Celebrity Cruises Inc.</u>, 750 F.3d 1195, 1197 (11th Cir. 2013).  Here, Makere alleges that he "filed suit within ninety (90) days of receiving his right-to-sue letter from the EEOC . . . ."  <u>See</u> TAC ¶ 7.  Although the Right-to-Sue Notice attached to the Third Amended Complaint is stamped with a mailing date of January 23, 2020, it also reflects that it was sent to Makere via a law firm in Orlando with which Makere has no apparent connection.  <u>See</u> TAC ¶ 7, Ex. A.  Indeed, Makere attaches to the Third Amended Complaint the emails he allegedly sent to the FCHR in an attempt to initiate the 2019 investigation which provide an address for Makere in Jacksonville, Florida.  <u>See</u> TAC ¶ 7, Ex. B.  Thus, on the current record, the

mailing date on the Right-to-Sue Notice alone does not undermine Makere's assertion that he filed his Title VII claims within ninety-days of receiving the Notice.  To the extent Allstate argues that it was Makere's responsibility to notify the EEOC of any change in his address, or that Makere otherwise received notice that the EEOC had terminated its administrative processing of the charge sufficient to trigger the limitations period, the Court finds that these arguments raise issues that cannot be resolved on a motion to dismiss. See King v. United Parcel Serv., Inc., No. 22-CV-61140-RAR, 2023 WL 2837071, at *2 (S.D. Fla. Apr. 7, 2023) (holding that factual disputes regarding when the Right to Sue letter was received were inappropriate to resolve at the motion to dismiss stage); see Vinson v. Fla. Dep't of Corr., No. 1:19-cv-333-AW-GRJ, 2020 WL 12309502, at *2 (N.D. Fla. May 15, 2020) (finding that the court cannot resolve factual disputes as to when the ninety day window began on a 12(b)(6) motion); see Jones v. Spherion Atl. Enter., LLC, No. 6:10-cv-833-Orl-31GJK, 2010 WL 11626722, at *3 (M.D. Fla. Sept. 29, 2010) (explaining that the court cannot address whether reasonable grounds exist for equitable tolling of the ninety day filing period because it would involve considering evidence outside the four corners of the complaint).  Indeed, the cases on which Allstate relies to support this argument were resolved on summary judgment or following an evidentiary hearing.  See Motion at 22 (citing Harbuck v. Kelley Foods of Ala., Civ.A. 1:98CV490-MHT, 2006 WL 827109, at *1 (M.D. Ala. Mar.

29, 2006) and <u>Lewis v. Conners Steel Co.</u>, 673 F.2d 1240, 1243 (11th Cir. 1982)).

As such, except as noted above, <u>see</u> <u>supra</u> note 14, the Court will deny Allstate's

request for dismissal of Makere's Title VII claims at this time.  Allstate may

renew this challenge in a motion for summary judgment, as appropriate.[16]

Although the case will move forward on Counts X-XIII at this time, the

Court notes that these claims face significant headwinds.  On a more developed

record, it may well be that Allstate is able to establish that Makere had

"'unambiguous notice that the EEOC ha[d] terminated its administrative

processing of the charge,'" long before the email he received from the EEOC on

March 9, 2021.  <u>See</u> <u>Jones v. Wynne</u>, 266 F. App'x 903, 905 (11th Cir. 2008)

(quoting <u>Gonzalez v. Firestone Tire & Rubber Co.</u>, 610 F.2d 241, 245 (5th Cir.

1980)).  Regardless, even if this lawsuit is timely filed, it appears that the

underlying claims may not have been timely exhausted.  Significantly,

Makere's allegations in the Third Amended Complaint concerning the

statutory prerequisites to suit concern the 2019 FCHR Charge and the Right-

to-Sue Notice on which he relies pertains to that Charge.  <u>See</u> TAC ¶ 7.a.; Ex.

---

[16] The Court notes that two of the exhibits Makere attaches to his Response, Exhibits J and K, are additional legal memoranda raising arguments relevant to the statute of limitations issue.  <u>See</u> Response, Ex. J: Plaintiff's Memorandum of Law Regarding Equitable Tolling on Plaintiff's Full Verified Complaint; <u>id.</u>, Ex. K: Plaintiff's Motion for Judicial Notice of Plaintiff's Unchanged Mailing Address.  Makere is cautioned that he may not circumvent the page limit requirements set forth in Local Rule 3.01(b) by recharacterizing a legal brief as an exhibit and attaching it to his Response.  For the same reason, it is also improper to reincorporate arguments raised in other briefs by reference.  <u>See</u>, <u>e.g.</u>, Response at 14. Although the Court declined to strike these improper exhibits in this instance, going forward, the Court will not consider arguments that are not set forth in the brief itself.

A (identifying EEOC Charge No. 15D-2019-00685).  Thus, it appears unlikely that claims arising during Makere's employment with Allstate, which ended in 2016, would be timely raised in an EEOC Charge filed in 2019.  See Wen Liu v. Univ. of Miami Sch. of Medicine, 693 F. App'x 793, 796 (11th Cir. 2017) ("An EEOC charge is timely in a deferral state, like Florida, if filed within 300 days of the last discriminatory act.").  And, even to the extent those claims were properly exhausted, it appears likely that collateral estoppel would bar them for the same reasons as previously stated in the 2021 Order with respect to Makere's § 1981 claims.  See 2021 Order at 20-27; see also Cataldo v. St. James Epsicopal [sic] Sch., 213 F. App'x 966, 967-69 (11th Cir. 2007) (affirming dismissal of the Title VII retaliation claim under collateral estoppel because the issue of retaliation was already litigated).  However, because Allstate did not raise those arguments in its Motion, the Court will not consider them at this time.

Nevertheless, in light of the foregoing and given the particular circumstances of this case, the Court finds it appropriate to bifurcate the proceedings.  The Court will allow the parties to proceed with limited discovery only as relevant to the statute of limitations, exhaustion, and collateral estoppel issues, and will set a deadline for the filing of a dispositive motion, if appropriate, on those issues.  All other discovery in this action will remain stayed pending further order of the Court.

-35-

Accordingly, it is

**ORDERED:**

1. Defendant's Dispositive Motion to Dismiss Plaintiff's Full Verified Civil Complaint with Prejudice and Memorandum of Law in Support Thereof (Doc. 78) is **GRANTED, in part, and DENIED, in part**.

    A. The Motion is **GRANTED** to the extent Counts I, II, III, IV, V, VI, VII, VIII, IX, and XIV are **DISMISSED**. The Motion is further **GRANTED** to the extent any claims in Count XIII premised on acts of post-termination retaliation are **DISMISSED**.

    B. Otherwise, the Motion is **DENIED**.

2. The stay of this case entered on January 4, 2022, <u>see</u> Order (Doc. 88), is **LIFTED** and the Clerk of the Court is **directed** to reopen the case.

3. The stay of discovery in this matter, <u>see</u> Orders (Doc. 39, 40), is **PARTIALLY LIFTED**. Between June 21, 2023 and September 29, 2023, the parties may proceed with limited discovery as relevant to the statute of limitations, exhaustion, and collateral estoppel issues. All other discovery **REMAINS STAYED** until further order of the Court.

4. The dispositive motion deadline with respect to the issues identified in paragraph three is **October 30, 2023**. After that date, the Court will set an appropriate deadline for the filing of a case management report.

**DONE AND ORDERED** in Jacksonville, Florida, this 21st day of June, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Party