# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ELIAS MAKERE, FSA, MAA,

    Plaintiff,

v.                                Case No. 3:20-cv-905-MMH-LLL

ALLSTATE INSURANCE COMPANY,

    Defendant.

_____

ELIAS MAKERE, FSA,

    Plaintiff,

v.                                Case No. 3:20-cv-921-MMH-LLL

ALLSTATE INSURANCE COMPANY,

    Defendant.

_____

ELIAS MAKERE,

    Plaintiff,

v.                                Case No. 3:20-cv-922-MMH-LLL

ALLSTATE INSURANCE COMPANY,

    Defendant.
_____/

## **O R D E R**[1]

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment on Counts X-XIII of Plaintiff's Third Amended Complaint and Incorporated Memorandum of Law (Doc. 99; Motion), filed on October 30, 2023. On November 14, 2023, Plaintiff Elias Makere, proceeding pro se, filed a response in opposition to the Motion. See Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 101; Response). Defendant Allstate Insurance Company filed a reply in support of its Motion on November 28, 2023. See Defendant's Reply Brief in Support of its Motion for Summary Judgment (Doc. 103). Accordingly, this matter is ripe for review.[2]

### **I. Background**

This Order marks the third time the Court has had occasion to rule on a dispositive motion in this case. On February 8, 2021, the Court granted, in part, and denied, in part, a motion to dismiss Makere's initial Complaint for Employment Discrimination (Doc. 1; Initial Complaint). See Order (Doc. 40;

---

[1] On August 31, 2020, the Court entered an Order consolidating the above-captioned cases, directing the Clerk of the Court to terminate any pending motions in the later-filed cases, 3:20-cv-921 and 3:20-cv-922, and instructing the parties to make all future filings in the lead case only, 3:20-cv-905. See Order (Doc. 7) at 2-3. Accordingly, all citations to the docket in this Order refer to the lead case, 3:20-cv-905, unless otherwise stated.

[2] The Court has considered Makere's request for oral argument and finds that a hearing is unnecessary to the resolution of the remaining issues in this case.

-2-

2021 Order).³ Following the 2021 Order, Makere twice amended his complaint such that the operative pleading at this time is Makere's third amended complaint. See Full Verified Civil Complaint (Doc. 73; Third Amended Complaint or TAC). Allstate moved to dismiss the Third Amended Complaint and on June 21, 2023, the Court entered an Order granting, in part, and denying, in part, Allstate's request. See Order (Doc. 96; 2023 Order).⁴ In the prior Orders, the Court set forth at length the factual allegations giving rise to this lawsuit as well as the convoluted procedural history of this case and the prior administrative proceedings. See 2021 Order at 5-14; 2023 Order at 3-14. The Court provides a brief overview below but will otherwise presume the reader's familiarity with those Orders and adopt their defined terms.

In this lawsuit, Makere contends that he was subjected to race, sex, and color discrimination during his approximately three-year period of employment with Allstate. See TAC at 52-54. He maintains that the harassment he received concerning his race and sex was so severe that it created a hostile work environment. Id. at 52-53. He also asserts that Allstate's ultimate decision to terminate his employment was motivated by his

---

³ Makere v. Allstate Ins. Co., No. 3:20-cv-905-MMH-JRK, 2021 WL 424349, at *13 (M.D. Fla. Feb. 8, 2021).

⁴ Makere v. Allstate Ins. Co., No. 3:20-cv-905-MMH-LLL, 2023 WL 4107107, at *13 (M.D. Fla. June 21, 2023).

race, sex, and color. Id. at 52-53. In addition, Makere alleges that Allstate retaliated against him for complaining about its discriminatory practices, most notably by terminating his employment. Id. at 53-54. Makere contends that Allstate engaged in additional acts of retaliation against him after his termination as well. Id. at 54. At present, the only claims remaining in this action are Makere's race, sex, and color discrimination claims premised on Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., which are set forth in Counts X-XII of the Third Amended Complaint. See TAC at 52-53; see also 2023 Order at 31-34. The Title VII retaliation claim in Count XIII also remains at issue but solely to the extent it is based on Makere's termination or any pre-termination acts of alleged retaliation. See TAC at 53-54.[5]

## II. Summary of the Arguments

In the instant Motion, Allstate moves for summary judgment in its favor on all remaining claims pursuant to Rule 56, Federal Rules of Civil Procedure (Rule(s)). See Motion at 1-3. Allstate asserts that Makere's Title VII claims are time-barred because he failed to timely exhaust his claims by filing a

---

[5] The Court previously dismissed the discrimination and retaliation claims under the Florida Civil Rights Act (FCRA), Fla. Stat. §§ 760.01-760.1, that Makere raised in the original Complaint and reasserted in the Third Amended Complaint. See 2021 Order at 18, 37; 2023 Order at 13 n.7. The Court also dismissed Makere's 42 U.S.C. § 1981 race discrimination and retaliation claims in their entirety. See 2021 Order at 27, 37; 2023 Order at 14 n.8, 28, 36. And the Court dismissed Makere's Title VII retaliation claim to the extent it is premised on alleged acts of post-termination retaliation. See 2023 Order at 31 n.15, and 36.

charge with the EEOC within 300 days of the alleged discriminatory acts. See Motion at 12-14. In addition, Allstate contends that these claims are barred due to Makere's failure to initiate a lawsuit raising his Title VII claims within ninety days of receiving the EEOC's Right-to-Sue Notice. Id. at 14-18. According to Allstate, the EEOC issued the Right-to-Sue Notice on January 23, 2020, but Makere did not file a lawsuit raising his Title VII claims until March 9, 2021. Id. at 15-16. Allstate acknowledges that the EEOC did not send the Right-to-Sue Notice to Makere directly but maintains that Makere had "constructive receipt" of the Notice because the EEOC sent it to an attorney who had appeared on Makere's behalf in the administrative proceedings. See id. at 16. Last, Allstate argues that the doctrine of collateral estoppel bars Makere's Title VII claims because the same parties and issues were litigated and resolved in state administrative proceedings and ultimately affirmed in Florida's First District Court of Appeals. Id. at 18-25.

In the Response, Makere identifies two purported factual disputes that he contends require denial of the Motion. Makere argues that he dual-filed his charge of discrimination with the FCHR and EEOC on April 10, 2019, and not on April 26, 2019, as Allstate maintains. Compare Response at 4, Exs. 101-102 with Motion at 7, Ex. H.[6] Notably, Makere does not explain how this

---

[6] In the 2021 Order and 2023 Order, the Court identified this charge as the "2019 FCHR Charge." See 2021 Order at 11; see also 2023 Order at 9. It is undisputed that this

dispute concerning the correct filing date for the 2019 Charge is material to the arguments asserted in the Motion. In addition, Makere maintains that he did not receive the Right-to-Sue Notice until March 9, 2021, such that his Title VII claims, which he filed that same day, are timely. See Response at 13. According to Makere, the Notice sent to the attorney was ineffective because that attorney did not represent him in the administrative proceedings concerning the 2019 Charge. See id. at 4-5. Makere presents evidence which he contends shows that the FCHR knew that his former attorney was not representing him for purposes of the 2019 Charge. See id., Ex. 306. Significantly, Makere does not respond to Allstate's arguments that his claims are barred because he did not file the 2019 Charge within 300 days of his termination. Nor does Makere respond to Allstate's contention that his claims are barred by collateral estoppel.

In the Reply, Allstate contends that Makere's failure to respond to its collateral estoppel arguments warrants the entry of summary judgment in its favor on that basis. See Reply at 1. Allstate further argues that the issues of fact which Makere identifies in his Response are immaterial to the issues raised in the Motion. See Reply at 2. According to Allstate, Makere fails to offer any basis why collateral estoppel does not bar his Title VII claims. Id. at

---

Charge was dual-filed with the EEOC. As such, and because this Order concerns the Title VII claims, the Court will refer to this Charge going forward as the 2019 Charge.

2-4. Allstate also disputes Makere's reliance on the April 10, 2019 filing date but maintains that regardless, Makere failed to timely exhaust his Title VII claims. Id. at 4-5. Last, Allstate argues that even assuming the notice sent to Makere's former counsel was insufficient to trigger the limitations period, Makere still had reason to know of the Right-to-Sue Notice and did not act with due diligence to obtain a copy. Id. at 5-7.

### III. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[7] An issue is genuine when the evidence is such

---

[7] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 Advisory Committee's Note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding; they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013).

that a reasonable jury could return a verdict in favor of the nonmovant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Est. of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over

---

Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

In citing to Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) ("The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case."). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

**IV.   Discussion**

Prior to commencing a Title VII action in court, "a complainant must first file a charge with the Equal Employment Opportunity Commission . . . ." See Fort Bend Cnty., Tex. v. Davis, 139 S. Ct. 1843, 1846 (June 3, 2019) (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1)); see also Bennett v. Chatham Cnty. Sheriff Dep't, 315 F. App'x 152, 161 (11th Cir. 2008); Kelly v. Dun & Bradstreet, Inc., 557 F. App'x 896, 898 (11th Cir. 2014). "An EEOC charge is timely in a deferral state, like Florida, if filed within 300 days of the last discriminatory act." See Wen Liu v. Univ. of Miami School of Medicine, 693 F. App'x 793, 796 (11th Cir. 2017); see also E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

Once the EEOC terminates its investigation and issues a right-to-sue notice, a claimant may then bring a civil action against the named respondent by filing a complaint within ninety days. See Gant v. Jefferson Energy Co-op., 348 F. App'x 433, 434 (11th Cir. 2009) (citing 42 U.S.C. § 2000e-5(f)(1)); Wilkerson v. H&S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) ("In order to sue for violations of Title VII, a plaintiff must first exhaust administrative remedies, which means she must receive a right-to-sue letter from the EEOC.").

It is undisputed that Allstate informed Makere of his termination on August 12, 2016, "effective immediately." See Response at 8. Thus, all adverse acts or harassment underlying Makere's race, color, or sex discrimination claims, as well as any acts of retaliation up to and including his termination, necessarily occurred on or before August 12, 2016.[8] From that date, Makere had 300 days—until June 8, 2017—at the latest, to file a charge challenging Allstate's employment practices. However, under Makere's version of the facts, he filed the 2019 Charge on April 10, 2019. See TAC ¶ 7.a.; see also Response at 4, Exs. 101, 102.[9] Thus, even if Makere's position is correct, he filed the 2019

---

[8] Makere's 2019 Charge also included acts of post-termination retaliation. However, as noted above, the Court previously dismissed Makere's Title VII claims premised on those acts. See 2023 Order at 19-28, 31 n.15. Thus, the Court need not determine whether Makere's 2019 Charge was timely filed as to those discrete acts.

[9] As discussed in the 2021 Order, Makere previously filed a charge with the FCHR in 2017. See 2021 Order at 8. However, Makere does not argue that this 2017 FCHR Charge was dual filed with the EEOC, nor does he otherwise contend that it satisfies the conditions precedent for his Title VII claims. See Response at 4, 9, 10. Indeed, in the Third Amended Complaint, Makere relies solely on the 2019 Charge and the Right-to-Sue Notice resulting

Charge more than two and a half years after his employment with Allstate ended—well beyond the 300-day period for Title VII claims. Notably, Makere does not raise any argument disputing this timeframe. Accordingly, viewing the evidence in the light most favorable to Makere, the record establishes that he failed to timely exhaust his administrative remedies and the Title VII claims remaining in this case are not actionable. See Morgan, 536 U.S. at 114; Wen Liu, 693 F. App'x at 797. Because the Court finds that Allstate is entitled to summary judgment on this basis as to all remaining claims, the Court need not address Allstate's other arguments.

## V.  Miscellaneous Motions

On June 11, 2021, Makere filed a motion for sanctions pursuant to Rule 11.[10] See Plaintiff's Motion for Sanctions (Doc. 59) at 2, 5. Allstate filed a response in opposition to the Motion for Sanctions on June 25, 2021. See Defendant's Response in Opposition to Plaintiff's Motion for Sanctions (Doc.

---

from that Charge to assert that he has met the conditions precedent to filing this lawsuit. See TAC ¶¶ 6-7, Exs. A-B. As such, the Court does not consider the 2017 FCHR Charge in this analysis. Regardless, Makere filed the 2017 FCHR Charge on June 30, 2017, see TAC ¶ 53, more than 300 days after he received unequivocal notice of his termination. See Response at 8 (stating that he was terminated on August 12, 2016, "effective immediately").

[10] Although Makere also invokes Rule 37(b)(2)(A), he does so only for the purpose of discussing the types of sanctions that a court may impose. See Motion for Sanctions at 8-9. But, Makere's Motion for Sanctions is not premised on discovery violations such that any reliance on Rule 37 as a basis for sanctions is unavailing. See Rule 37(b)(2)(A) (permitting sanctions where a party "fails to obey an order to provide or permit discovery . . . ."); see also Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1542 (11th Cir. 1993) (explaining that Rule 37 "gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders").

61). On October 22, 2021, the Court entered an Endorsed Order (Doc. 71) deferring consideration of the Motion for Sanctions until after resolution of the merits. As such, the Court takes up the Motion for Sanctions at this time.

Makere moves for sanctions based on a dispute between the parties concerning whether Makere's 2017 FCHR Charge raised both race and sex discrimination claims. See Motion for Sanctions at 3-5. Makere maintains that the 2017 FCHR Charge included both types of claims because he titled the Charge "Racial Discrimination, Sex Discrimination." See Motion for Sanctions at 4, Ex. A. Allstate has taken the position that the initial 2017 FCHR Charge was based only on race discrimination because, despite the title, the substantive allegations solely pertained to race discrimination. See Sanctions Response at 7-8; see also 2017 FCHR Charge (Doc. 4-1). Regardless of the merits of either parties' position, this dispute plainly does not warrant the imposition of sanctions as Allstate's position is not unreasonable, in bad faith, or for an improper purpose. See Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003) (discussing when Rule 11 sanctions are appropriate).[11]

---

[11] Notably, whether or not Makere's initial 2017 FCHR Charge sufficiently included a sex discrimination claim had absolutely no bearing on the outcome of this lawsuit.

Moreover, the Motion is due to be denied for the additional reason that Makere failed to comply with Rule 11's "safe harbor" requirement. See Rule 11(c)(2). Pursuant to Rule 11(c)(2),

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

See Rule 11(c)(2) (emphasis added). This provision is known as the Rule 11 "safe harbor." In the Motion for Sanctions, Makere asserts that he satisfied this requirement via emails and phone calls he exchanged with opposing counsel. See Motion for Sanctions at 9 n.2, Ex. D; see also id., Attach. 5. However, the Rule specifically requires service of the motion. See Rule 11(c)(2). Indeed, "an informal warning, in the form of a letter or other document, without service of a separate Rule 11 motion is almost universally regarded as insufficient to trigger the 21-day safe harbor period." See Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd., No. 20-21630-Civ-SCOLA/TORRES, 2022 WL 1203562, at *5 (S.D. Fla. Mar. 29, 2022) (collecting cases); see also Wright & Miller, Federal Practice and Procedure § 1337.2 (4th ed. 2023) ("Note that informal notice—rather than formal service—of a potential violation is insufficient to trigger the beginning of the twenty-one day safe harbor period."). Pursuant to his Certificate of Service, Makere served the

Motion for Sanctions on Allstate the same day he filed it with the Court.  See Motion for Sanctions at 11.  Makere's "failure to give [Allstate] the twenty-one day safe harbor period forecloses Rule 11 sanctions" for the challenged statements.  See Macort v. Prem, Inc., 208 F. App'x 781, 786 (11th Cir. 2006).  Accordingly, the Motion for Sanctions is due to be denied.[12]

Last, the Court turns to Makere's request for judicial notice and related request for clarification concerning the dismissal of his FCRA claims.  See Plaintiff's Motion for Judicial Notice of Plaintiff's Full Administrative Complaint (Dated 4/10/19) (Doc. 41; Request for Judicial Notice), filed February 9, 2021; Plaintiff's Motion for Clarification (Doc. 97; Clarification Motion), filed on July 7, 2023.  Allstate filed responses in opposition to these Motions on February 22, 2021, and July 24, 2023, respectively.  See Defendant's Response in Opposition to Plaintiff's Motion for Judicial Notice of Plaintiff's Full Administrative Complaint (Dated 4/10/19) (Doc. 42; Judicial

---

[12] The Court notes that on January 9, 2024, Makere filed Plaintiff's Memorandum of Law in Support of 'Plaintiff's Motion for Sanctions' (Doc. 105; Sanctions Memo).  Allstate filed a response in opposition to this Sanctions Memo on January 23, 2024.  See Defendant's Response in Opposition to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Sanctions [D.E. 59] (Doc. 106).  In the Sanctions Memo, Makere attempts to supplement his Sanctions Motion with additional acts purportedly warranting sanctions.  See Sanctions Memo at 1.  Specifically, Makere asserts that sanctions are warranted based on Allstate's contention in its Motion for Summary Judgment that the 2019 Charge was filed on April 26, 2019.  See Sanctions Memo at 3-4.  However, as discussed below, whether the operative filing date for the 2019 administrative proceedings is April 10, 2019, or April 26, 2019, is subject to reasonable dispute.  Thus, Allstate's position on this matter does not warrant sanctions.  Regardless, Makere failed to comply with the Rule 11(c)(2) safe harbor requirement before raising this additional basis for sanctions.  See Sanctions Memo at 10 (certifying service on January 9, 2024, the same day Makere filed the document with the Court).

Notice Response); Defendant's Response in Opposition to Plaintiff's Motion for Clarification (Doc. 98; Clarification Response). Makere also filed a supplement to his Request for Judicial Notice on November 18, 2023. See Plaintiff's Memorandum of Law in Support of 'Plaintiff's Motion for Judicial Notice . . . Dated 4/10/19)' [sic] (Doc. 102; Judicial Notice Suppl.). And Allstate filed a response in opposition to that filing as well. See Defendant's Response in Opposition to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judicial Notice Dated 4/10/19 (Doc. 104; Response to Judicial Notice Suppl.), filed December 4, 2023.

These filings all concern Makere's ongoing contention that he filed the 2019 FCHR Charge on April 10, 2019, and not on April 26, 2019, as the Court stated in the 2021 Order. This issue is relevant solely to the Court's finding in the 2021 Order that Makere's FCRA claims are administratively barred. See 2021 Order at 14-18. The Court's ruling was premised on the finding that the FCHR issued timely "No Cause" determinations regarding both the 2017 FCHR Charge and the 2019 Charge. Id. Although the Court previously denied Makere's motion for reconsideration of this finding, see Order (Doc. 91), to ensure an adequate record on appeal, the Court finds it appropriate to address Makere's argument on the merits and put the matter to rest.

The verified 2019 Charge bears an FCHR time stamp showing receipt on April 26, 2019, see 2019 EEOC Charge Form (Doc. 6-1), and it is this 2019

Charge on which the Court relied in the 2021 Order. See 2021 Order at 11. Nevertheless, as stated above, Makere contends that he actually initiated this second round of administrative proceedings on April 10, 2019. In support, Makere submits an email he sent to the FCHR on that date requesting an investigation into his "employment discrimination complaint against Allstate Insurance Company." See Motion for Judicial Notice at 3, Ex. A. Makere contends that he included with that email an EEOC Charge Form and a "Complaint Attachment." See id. at 3. He submits a copy of the "Complaint Attachment," which bears an FCHR time stamp of April 10, 2019. Id., Ex. B, part 1 at 1. Notably, the Complaint Attachment, although signed, is not verified. Id., Ex. B, part 3 at 52. Makere does not provide a copy of the "EEOC Form 5" which he maintains was also attached to that email. See id. at 3, Ex. B, part 3 at 53.[13] On this record, it is unclear whether the operative filing date for purposes of the 2019 administrative proceedings is April 10 or April 26.

---

[13] Significantly, although Makere attached numerous documents to his response to Allstate's initial motion to dismiss, he did not submit this email or the time-stamped attachment until after the Court entered the 2021 Order. See generally Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. 12). Notably, Allstate attached the EEOC Charge Form with the April 26, 2019 time-stamp to its initial motion to dismiss and, relying on the April 26, 2019 date, argued that the FCRA claims in the 2019 Charge were barred by the FCHR's October 18, 2019 "No Cause" determination. See Defendant's Dispositive Motion to Dismiss Plaintiff's Complaint with Prejudice, and Memorandum of Law in Support Thereof (Doc. 4) at 3-4, 10 n.4; id., Ex. F (Doc. 6-1). Thus, Makere had notice of this issue and the opportunity to contest it prior to the Court's 2021 Order. See Order (Doc. 91) (denying reconsideration based on this issue). Nevertheless, in the interest of completeness and given Makere's pro se status, the Court takes this opportunity to address the import of the alleged April 10, 2019 filing date.

However, as Allstate argues in its Judicial Notice Response, this dispute has no impact on the resolution of Makere's claims because regardless of which date governs, Makere's FCRA claims are due to be dismissed. See Judicial Notice Response at 3.

"Before a plaintiff may bring an FCRA civil action, he must exhaust his administrative remedies, as set forth in Fla. Stat. § 760.11." See McCullough v. Nesco Res. LLC, 760 F. App'x 642, 646 (11th Cir. 2019). This statute requires a plaintiff to file "formal charges with the EEOC or a state commission within 365 days of the alleged FCRA violation." Wen Liu, 693 F. App'x at 796 (citing Fla. Stat. § 760.11(1)). As with the Title VII claims discussed above, given that Makere received unequivocal notice of his termination on August 12, 2016, even if he filed the charge as he contends on April 10, 2019, it remains far beyond the 365-day statutory period for exhausting any FCRA claims arising during his employment. Thus, Makere's FCRA claims premised on acts of discrimination, harassment or retaliation that occurred during his employment with Allstate are not actionable.

The only claim which may not have been time-barred as of April 10, 2019, is Makere's retaliation claim premised on acts of post-termination retaliation. However, to the extent Makere raised such an FCRA claim in this action, it was premised on the same allegations that formed the basis of Makere's § 1981 and Title VII post-termination retaliation claims. See TAC at 47-48. In the

2023 Order, the Court dismissed those claims pursuant to Rule 12(b)(6) because Makere failed to allege a plausible claim for relief on that basis. See 2023 Order at 19-28, 31 n.15. Significantly, "the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework . . . ." See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010). As such, even if Makere's FCRA post-termination retaliation claim is not procedurally barred, it is due to be dismissed for the same reasons Makere's Title VII and § 1981 post-termination retaliation claims were dismissed—Makere fails to allege a plausible claim of post-termination retaliation. See 2023 Order at 19-28, 31 n.15.

In light of the foregoing, the Court will grant Makere's Request for Judicial Notice and Motion for Clarification to the extent he asks the Court to consider his evidence of an April 10, 2019 filing date. However, having considered this evidence, the Court finds that the FCRA claims are due to be dismissed regardless of which filing date controls and will supplement the 2023 Order with these alternative bases for dismissal of those claims. See Reynolds v. Calhoun, 650 F. Supp. 3d 1272, 1275 (M.D. Ala. 2023) ("[A] district court has broad and 'plenary power' over its interlocutory orders, and 'may therefore reconsider, revise, alter or amend that order at any time prior to final judgment.'" (quoting Hardin v. Hayes, 52 F.3d 934, 938 (11th Cir. 1995))). At this time, the Court has resolved all of the claims raised in this action and will

therefore direct the Clerk of the Court to enter judgment in Allstate's favor and close the file. Accordingly, it is

**ORDERED:**

1. Defendant's Motion for Summary Judgment on Counts X-XIII of Plaintiff's Third Amended Complaint and Incorporated Memorandum of Law (Doc. 99) is **GRANTED**.

2. Plaintiff's Motion for Sanctions (Doc. 59) as supplemented by Plaintiff's Memorandum of Law in Support of 'Plaintiff's Motion for Sanctions' (Doc. 105) is **DENIED**.

3. Plaintiff's Motion for Judicial Notice (Doc. 41) and Plaintiff's Motion for Clarification (Doc. 97) are **GRANTED** to the extent set forth above and otherwise **DENIED**.

4. The Court's June 21, 2023 Order (Doc. 96) is supplemented as set forth in this Order.

5. Pursuant to the Court's determinations in this Order, the June 21, 2023 Order (Doc. 96), and the February 8, 2021 Order (Doc. 40), the Clerk of the Court is directed to enter **judgment** in favor of Defendant Allstate Insurance Company and against Plaintiff Elias Makere on all claims raised in these consolidated actions.

6. The Clerk of the Court is further directed to terminate all pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 26th day of March, 2024.

MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Party